**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0105-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSE M. CASTRO-LAVADO,

     Defendant-Appellant.

_____

Submitted July 8, 2019 – Decided July 16, 2019

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-06-0422.

Joseph E. Krakora, Public Defender, attorney for appellant (John W. Douard, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

After the trial court granted the State's motion to admit two statements he provided to law enforcement, defendant pled guilty to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1). Defendant appeals from the judgment of conviction dated July 2, 2018, and challenges the judge's decision to admit the statement he made to law enforcement at the prosecutor's office, and the sentence the court imposed. For the reasons that follow, we affirm the order admitting defendant's statement and his conviction, but remand for resentencing.

I.

In June 2017, a Hudson County grand jury charged defendant with first-degree purposeful or knowing murder, N.J.S.A. 2C:11-3(a)(1) and/or (2) (count one); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count two); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). Thereafter, the State filed a motion to admit two statements defendant provided to the police.

On October 13, 2017, the judge conducted an evidentiary hearing on the State's motion. Detective Ramon Lopez of the Kearny Police Department testified that during the evening of April 10, 2017, he responded to a second-floor apartment in a house on Chestnut Street in Kearny. Two other officers and members of the fire department were already on the scene. Lopez proceeded to

the second-floor apartment and was told by officers that the victim was dead. The victim was defendant's wife.

According to Lopez, defendant was seated on the stairs outside the apartment. The police had placed him in handcuffs. According to Lopez, defendant appeared to be calm. Defendant kept trying to speak, but Lopez "tried to discourage him from doing" so. Because defendant continued speaking, Lopez read defendant his Miranda rights in Spanish.[1]

Defendant told the officer that he should check the victim's phone because men had been calling her. "[H]e said he knew what he did was wrong and he would accept . . . responsibilit[y]" for his actions.

Lopez and another officer transported defendant to the offices of the Hudson County Prosecutor. There, Detective Nathan Gonzalez read defendant his Miranda rights in Spanish. Lopez was present for the interview. Lopez noted that there was blood on defendant's clothes.

Lopez testified that defendant did not appear under the influence of alcohol or drugs, and his speech was coherent. The investigator questioned defendant for about forty-five minutes. The investigator made a video recording of the interview. The recording was played and translated into English.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0105-18T2

The State also presented the judge with a transcript of defendant's recorded statement, which had been translated into English. The transcript states that after Gonzalez read defendant his Miranda rights, defendant agreed to answer the detective's questions. Defendant said he married the victim four years ago in Peru. Defendant had been living in the United States for six months before the incident. He stated that he learned that his wife had been unfaithful. When defendant questioned his wife about other men she had been seeing, she said they were friends.

Defendant stated that earlier that day, he returned home from work around 6:00 p.m. His wife was in the bedroom. They started to argue. He confronted her about her infidelity. The victim told defendant the men she had gone out with were just friends. She told defendant to take his things and leave. According to defendant, his wife struck him. He went to the kitchen and grabbed two knives. Defendant stated that the argument continued. He stabbed his wife once, and his wife apologized for her "mistakes," but defendant said he kept stabbing her because he was "so angry." After he stopped stabbing his wife, defendant grabbed his wife by the neck and began to strangle her. He said his intention was to kill her.

A-0105-18T2

Defendant also testified at the hearing. He said that before that day, he had never been in a police station. He had never been arrested, and only completed the third grade in school. Defendant said his native language is Spanish, and he grew up in Peru. He is not able to read or write in English. He stated that he was told that if he decided to answer questions without a lawyer present, he could still stop answering questions at any moment until he consulted with a lawyer. He was asked if he understood that statement, and said he thought his attorney could not come in until after the detectives finished questioning him.

Defendant admitted he was told that an attorney would be appointed for him if he did not have money to pay for a lawyer, but stated that he thought he could give his statement and afterwards, that appointed attorney "would help me[.]" He also said he understood that if he could afford an attorney, that lawyer would have been able to represent him before he answered questions.

Defendant admitted signing the form which stated that he waived his Miranda rights, but he said he was not able to read the document before he signed it. He relied upon what the detective had read to him on the form. He stated that if he had known he had a right to an attorney before he answered any questions, he would have asked for an attorney to represent him.

A-0105-18T2

Defendant further testified that at the "second place" where he was taken, he was asked a series of questions about his name and employment, and he said "[i]t was a little hard because he was in shock" at the time. He said that sometimes he did not "understand well" and the investigators "would repeat the question[.]" Defendant admitted that the investigators spoke to him in Spanish and discussed all of his rights. He stated that he knew he did not have to say anything, but he wanted to tell the investigators what had happened at the house.

The judge heard oral argument by counsel and thereafter read an oral decision into the record. The judge summarized the testimony and found that Lopez was "highly credible." The judge found that the statements defendant made to Lopez at the house were made spontaneously and not in response to any questions by the officer. There was no evidence defendant was coerced into making his statements. The judge found that these statements were admissible.

The judge also noted that the State had the burden of proving beyond a reasonable doubt that defendant's waiver of his Miranda rights at the prosecutor's office was made knowingly, intelligently, and voluntarily. The judge stated that the court must consider the totality of circumstances in determining if the State had met its burden.

A-0105-18T2

The judge found that defendant unambiguously stated several times that he did not want a lawyer. Defendant stated that he understood that he could have a lawyer before questioning. He was told that it did not matter if he could not afford a lawyer, one would be appointed to represent him.

Defendant testified that he did not understand he could have a lawyer prior to questioning, but the judge found this testimony was inconsistent with the transcripts of the interview. The judge found defendant's testimony was not credible, and noted that the overwhelming amount of evidence presented by the State contradicted his testimony.

The judge also noted that a person's literacy and education were factors to be considered in deciding whether he waived his Miranda rights knowingly, intelligently, and voluntarily. The judge pointed out that Gonzalez spoke with defendant and read him his rights in Spanish so he could waive them orally. Gonzalez also told defendant what he was signing so he did not have to read the waiver.

The judge found that defendant's level of education did not bolster his credibility. The judge noted that defendant was thirty-six years old when he made the statement, and while his education is limited, there was no sign this had an impact on his waiver. The judge observed that the interrogation lasted

7

only forty-five minutes, and there were "no signs of police misconduct." The judge concluded that the State had proven, beyond a reasonable doubt, that defendant validly waived his Miranda rights and the recorded statement could be admitted at trial.

On April 16, 2018, defendant pled guilty to count one, which was amended from first-degree murder to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1). At the plea hearing, defendant admitted that on April 10, 2017, he learned his wife had been cheating on him. He said that after work, he went home and confronted her with that information.

Defendant said his wife insulted him and he became enraged about her insults and infidelity. He went to the kitchen, took two knives, and stabbed her. He admitted he was aware that by stabbing his wife, he was creating a substantial risk she may sustain serious bodily injury and die as a result.

Thereafter, the judge sentenced defendant to twenty-five years of incarceration, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and five years of parole supervision. This appeal followed.

On appeal, defendant argues:

POINT I
[DEFENDANT]'S STATEMENT SHOULD BE SUPPRESSED BECAUSE IT WAS TAKEN IN VIOLATION OF MIRANDA, BECAUSE HE READS AT A THIRD-GRADE LEVEL, [DEFENDANT] WAS UNABLE TO PROVIDE A KNOWING AND INTELLIGENT WAIVER OF HIS RIGHT TO AN ATTORNEY. U.S. [CONST.] AMENDS. V, XIV; N.J. [CONST. ART.] I, [PARA.] 1.

POINT II
THE TRIAL JUDGE ERRED IN FAILING TO FIND MITIGATING FACTORS THAT WERE SUPPORTED BY THE RECORD, AND FAILING TO ADEQUATELY WEIGH AGGRAVATING AND MITIGATING FACTORS, RESULTING IN A MANIFESTLY EXCESSIVE SENTENCE.

II.

On appeal, defendant does not challenge the trial court's order admitting the statement he made to the police outside of the apartment where the decedent's body was found. Rather, defendant argues the trial court erred by admitting the recorded statement he provided to law enforcement. He contends the statement was taken in violation of his rights under Miranda because he reads at a third-grade level and was not able to make a knowing and intelligent waiver of his Miranda rights.

When reviewing a trial court's decision on a motion to suppress evidence, we defer to the court's factual and credibility findings if "supported by sufficient

9

credible evidence in the record." State v. S.S., 219 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)).  We accord deference to the trial court's "findings because the trial court has the 'opportunity to hear and see the witnesses and . . . have the "feel" of the case, which a reviewing court cannot enjoy.'"  Ibid. (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

We will disregard a trial court's findings of fact only if those findings "are . . . clearly mistaken."  State v. A.M., 237 N.J. 384, 395 (2019) (quoting Elders, 192 N.J. at 244).  Furthermore, the trial court's legal conclusions or the legal significance of established facts are entitled to no special deference, and we review those determinations de novo.  Id. at 396 (citing State v. Boone, 232 N.J. 417, 426 (2017)).

The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and New Jersey law.  See U.S. Const. amend. V; N.J.S.A. 2A:84A-19; N.J.R.E. 503.  In Miranda, the United States Supreme Court prescribed certain warnings that must be provided to an individual in police custody before interrogation may begin.  Miranda, 384 U.S. at 479.  The police must inform the individual

> [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one

will be appointed for him prior to any questioning if he so desires.

[Ibid.]

Miranda also requires that a person in custody be informed that he can exercise his rights at any time during the investigation. Ibid. The State has the burden to establish that the individual was informed of his rights, and that he knowingly, voluntarily, and intelligently waived those rights before the statements obtained in the interrogation can be used against him. See ibid.

In determining if the defendant's statement was voluntary, the court considers "the totality of circumstances." A.M., 237 N.J. at 398. Therefore, the court should consider "the defendant's 'age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved.'" State v. Nyhammer, 197 N.J. 383, 402 (2009) (quoting State v. Presha, 163 N.J. 304, 313 (2000)).

Here, the motion judge found that defendant waived his Miranda rights knowingly, voluntarily, and intelligently. There is sufficient credible evidence in the record to support the court's finding. As noted, after his arrest, defendant was taken to the prosecutor's office for questioning. Gonzalez spoke with defendant and informed him of his Miranda rights in Spanish. The detective

11

told defendant he had the right to remain silent, and that anything he said can and will be used against him in a court of law. Defendant stated that he understood. In addition, the detective told defendant that he had the right to consult with a lawyer before answering any question and the right to have the attorney present during questioning. Defendant again said that he understood.

The detective also told defendant that if he could not afford an attorney, an attorney will be appointed to him before any questioning if he wished. He stated that he understood. The detective told defendant that if he decides to answer questions without an attorney present, he still "ha[d] the right to stop answering questions at any moment until you consult with a lawyer." Defendant said he understood.

The detective then asked defendant if he was willing to answer questions. He replied, "Yes, but I don't have money to pay for a lawyer." The detective told defendant that does not matter and a lawyer "can be appointed to you." Defendant stated, "[O]kay." The detective stated, "The question is, now that you understand your rights, are you willing to answer questions?" Defendant replied, "Yes."

On appeal, defendant asserts that he has a third-grade literacy level in Spanish and does not speak any English. He claims he did not understand he

12

could have a lawyer appointed for him before he made any statements. The transcript of the interview shows, however, that the detective specifically told defendant a lawyer could be appointed for him before any questioning and defendant stated that he understood.

Defendant also argues that the motion judge erred by giving virtually no consideration to the possibility that he did not understand he could have an attorney appointed for him before he made any statement, rather than after he answered the detective's questions. The judge found, however, that defendant's testimony at the hearing was not credible, and that the State had presented overwhelming evidence that defendant understood his rights, notwithstanding his third-grade education and lack of literacy in both Spanish and English. The record supports those findings.

We therefore conclude there is sufficient credible evidence in the record to support the judge's determination that defendant made a knowing, intelligent, and voluntary waiver of his <u>Miranda</u> rights. The judge properly found that defendant's recorded statement could be admitted into evidence. Defendant's other arguments on this issue lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(2).

## III.

Defendant also argues that his sentence is excessive. He contends the judge should not have sentenced him to a prison term longer than the statutory minimum of ten years.

We review the sentence imposed in a criminal matter under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018) (citing State v. Robinson, 217 N.J. 594, 603 (2014)). In doing so, we consider whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record'; [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

"An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbath, 114 N.J. 394, 400-01 (1989); Roth, 95 N.J. at 364-65).

Here, the judge found aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (offense "was committed in an especially heinous, cruel, or depraved manner");

14

nine, N.J.S.A. 2C:44-1(a)(9) (need to deter "defendant and others from violating the law"); and fifteen, N.J.S.A. 2C:44-1(a)(15) ("offense involved an act of domestic violence" and "defendant committed at least one act of domestic violence on more than one occasion"). The judge also found mitigating factors seven, N.J.S.A. 2C:44-1(b)(7) (defendant has no prior record of delinquency or criminal activity); and twelve, N.J.S.A. 2C:44-1(b)(12) (defendant was willing to cooperate with law enforcement).

The judge found "that the aggravating factors substantially outweigh[ed] the mitigating factors[,]" and sentenced defendant in accordance with the plea agreement to a custodial term of twenty-five years, with an eighty-five percent period of parole ineligibility, pursuant to NERA.

On appeal, defendant argues that the judge weighed aggravating factors one and fifteen too heavily. He also argues the judge gave too much weight to aggravating factor nine. He claims the circumstances of this offense "are unlikely to recur" and "neither specific nor general deterrence" would be served by a maximum prison term. In addition, defendant argues the judge should have weighed mitigating factor seven more heavily in view of his "unblemished" criminal record, and erred by giving mitigating factor twelve little weight.

A-0105-18T2

Defendant further argues that the judge erred by not finding mitigating factors three, N.J.S.A. 2C:44-1(b)(3) ("[D]efendant acted under a strong provocation[.]"); eight, N.J.S.A. 2C:44-1(b)(8) ("[D]efendant's conduct was the result of circumstances unlikely to recur[.]"); nine, N.J.S.A. 2C:44-1(b)(9) (defendant's attitude and character make it unlikely he will commit another offense); and eleven, N.J.S.A. 2C:44-1(b)(11) (defendant's imprisonment will cause "excessive hardship to himself or his dependents").

We are convinced there is sufficient credible evidence to support the judge's findings of aggravating factors one and nine. The judge did not err by giving substantial weight to aggravating factor one. The record shows that defendant committed the offense in an especially heinous and cruel manner. Also, the judge did not err by finding there was a need to deter defendant and others from violating the law in this manner, and by giving that aggravating factor substantial weight.

We are also convinced the judge did not err by giving little weight to mitigating factor seven since defendant had only been in the United States for six months before he killed his wife and did not commit any other criminal offenses in that brief period. See State v. Soto, 340 N.J. Super. 47, 72 (App. Div. 2001) (holding that the judge properly refused to finding mitigating factor

seven where the defendant had only been in this country three years).  Moreover, the judge properly gave little weight to mitigating factor twelve.  See State v. Read, 397 N.J. Super. 598, 613 (App. Div. 2008) (noting that defendant's confession was not entitled to any substantial weight in the absence of any indication defendant had identified any other perpetrators or assisted the State in solving other crimes).

The judge also did not err by refusing to find mitigating factors three, eight, nine, and eleven.  Defendant claimed his wife was unfaithful and taunted him, but this does not constitute the "strong provocation" required for mitigating factor three.  Furthermore, the record does not support defendant's contention that his character and attitude indicate it is unlikely he will commit another offense in the future, or his claim that his criminal conduct was the result of circumstances unlikely to recur.  Also, while a lengthy prison term may be a hardship to defendant and his dependents, the record does not support a finding that the hardship would be excessive.

We conclude, however, that the judge erred by finding aggravating factor fifteen, which applies when "[t]he offense involved an act of domestic violence, as that term is defined in [N.J.S.A. 2C:25-19(a)] and the defendant committed at least one act of domestic violence on more than one occasion."  N.J.S.A.

2C:44-1(a)(15) (emphasis added). Here, defendant pled guilty to aggravated manslaughter, which comes within the definition of "an act of domestic violence" as defined in N.J.S.A. 2C:25-19(a). Domestic violence includes "homicide" under N.J.S.A. 2C:11-1 to -6, and aggravated manslaughter is criminal homicide. N.J.S.A. 2C:11-4(a).

Nevertheless, there is nothing in the record to show that defendant committed "at least one act of domestic violence on more than one occasion." Therefore, there is insufficient evidence in the record to support the finding of aggravating factor fifteen.

The ordinary term of imprisonment for aggravated manslaughter under N.J.S.A. 2C:11-4(a)(1) is ten to thirty years. See N.J.S.A. 2C:11-4(c). The plea agreement provided that the State would recommend that defendant be sentenced to a twenty-five year prison term, with an eighty-five percent period of parole ineligibility, pursuant to NERA. Because the trial court gave aggravating factor fifteen "tremendous weight" in sentencing defendant to a twenty-five-year prison term, we are constrained to remand for resentencing.

On remand, the court should allow the State to present any evidence that defendant "committed at least one act of domestic violence on more than one occasion." See N.J.S.A. 2C:44-1(a)(15). If the State does not present such

evidence, the court should resentence defendant in accordance with the other aggravating and mitigating factors found.

Defendant's conviction is affirmed, and the matter remanded to the trial court for resentencing in conformance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0105-18T2