# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4976-17T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

CARLOS R. BELAUNDE,

      Defendant-Appellant.

_____

Submitted October 30, 2019 - Decided December 2, 2019

Before Judges Koblitz and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No.16-03-0219.

Joseph E. Krakora, Public Defender, attorney for appellant (Zachary Gilbert Markarian, Assistant Deputy Public Defender, of counsel and on the briefs).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Carlos Belaunde appeals from his March 9, 2018 judgment of conviction after entering a negotiated guilty plea to second-degree attempted aggravated sexual assault, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-2(a)(7). He was sentenced to eight years of imprisonment, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant argues on appeal that his confession should have been suppressed. After careful review of the record, we disagree and affirm.

I. Factual background.

On July 15, 2014, the victim's mother reported to the Paterson Police Department that three days before, L.F., her twenty-year-old, non-verbal daughter who suffered from cerebral palsy and severe developmental delays, was sexually assaulted. She said defendant, the mother's then-boyfriend who had been living with them for four and a half years, was seen naked lying in L.F.'s bed. She told the police that the eyewitness, her friend who was staying with them, saw the two together. The mother took L.F. to Saint Joseph's hospital in Paterson, where a sexual assault examination kit was conducted.

The police found defendant on July 22, 2014, where he was staying with his former wife and sons. Detective David Posada and his partner, Detective Pauline Nassimos, arrived in plain clothes with their badges displayed around

their necks. Defendant voluntarily agreed to accompany the detectives to the prosecutor's office. He was neither charged, nor handcuffed. During the roughly twenty-minute drive to the prosecutor's office, the detectives did not talk with defendant about the allegations.

After arriving at the prosecutor's office, defendant was left alone in a locked interview room for about five minutes while Posada went to activate the recording equipment. Posada described defendant's demeanor as "very calm." Posada reentered the interview room and, upon determining that defendant preferred the interview be conducted in Spanish, handed defendant the Passaic County Prosecutor's Office Spanish Miranda[1] waiver form. While defendant followed along, Posada read the form aloud in Spanish. After reading each right, he asked defendant whether he understood it. Defendant indicated each time that he did understand. After reading all the rights, Posada and defendant engaged in the following colloquy, translated from Spanish:

> DET: Understanding these rights, are you willing to give up your rights and speak with me?
>
> CB: Honestly I really don't know what this is about.
>
> DET: Okay so you can understand I cannot speak to you about anything until we go over this document and you want to talk to me understanding what your rights are. So

[1] Miranda v. Arizona, 384 U.S. 436, 479 (1966)

it is your decision but before I can speak to you I have to go over these rights and make sure you understand what your rights are and then if you want you, you can talk to me.

CB: Oh, oh okay.

DET: Okay so I'm going to repeat it, understanding these rights, are you willing to give up your rights and speak with me?

CB: But during anytime can I[,] I um.

DET: Stop talking?

CB: Of course and talk to an attorney about this? Of course.

DET: Of course, of course number [six] says, if you decide to speak with now without a lawyer present you still have the right to stop speaking with me at any time.

Defendant then orally waived his Miranda rights and agreed to talk.

When Posada asked defendant what happened on July 12, 2014, defendant explained that he came home drunk around 7 or 8 a.m. He woke around 9:30 a.m. to go to the bathroom and somehow ended up in L.F.'s room. Defendant explained that instead of making a left to go to the bathroom, he made a right and entered the second bedroom, belonging to L.F. He was shirtless and had pulled his boxers halfway down his legs. Defendant first asserted the eyewitness saw L.F. awake and sitting in a chair while he was standing by the bed. When

4

defendant said nothing else happened, Posada accused him of lying. Posada explained that he had already spoken to other witnesses and knew what happened, but wanted to give defendant the opportunity to tell the truth.

Defendant then admitted to lying in bed with L.F while his boxers were halfway down his legs and L.F. was in her pajamas wearing shorts. Defendant was lying on his side with L.F. facing him and their heads touching. The eyewitness was passing by L.F.'s bedroom when she noticed defendant and yelled at him to leave. Defendant once again asserted that nothing else happened. Posada told defendant that he still did not believe him, and defendant should confess to him because the detective was his "best friend at this moment."

Defendant eventually admitted to hugging L.F. Defendant explained that he and L.F. were facing each other and his penis was touching her left leg while he was moving his body as they hugged. The eyewitness came into the room moments later and yelled at defendant to leave. Defendant explained that it was "good luck" the eyewitness entered when she did because "he would have done something else."

Posada left the interview room and upon returning, he told defendant that his supervisor and the prosecutors believed defendant was lying. At one point, Posada asked defendant whether he was a man of God. Defendant continued to

say he did not do anything else. This one hour and thirty-three minutes interview was video-recorded and later transcribed and translated into English.

Defendant raises the following issues on appeal:

> POINT I: BELAUNDE'S STATEMENT WAS TAKEN IN VIOLATION OF HIS RIGHT AGAINST SELF-INCRIMINATION, WAS INVOLUNTARY, AND WAS UNRELIABLE. THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS HIS STATEMENT.
>
> A. BELAUNDE DID NOT KNOWINGLY AND VOLUNTARILY WAIVE HIS RIGHTS BECAUSE DETECTIVE POSADA HASTILY PRESENTED THE MIRANDA WARNINGS AND, IN RESPONSE TO BELAUNDE'S REQUESTS FOR CLARIFICATION, CHARACTERIZED WAIVER AS A MERE BUREAUCRATIC FORMALITY.
>
> B. BELAUNDE'S STATEMENTS MADE FOLLOWING DETECTIVE POSADA'S REPETITIVE AND BELLIGERENT QUESTIONING, WHICH CONTRADICTED THE MIRANDA RIGHTS, MUST BE SUPPRESSED BECAUSE THEY WERE NOT VOLUNTARY AND ARE NOT RELIABLE.

## II. Legal standards.

We defer to a trial court's factual findings as to the voluntariness of a defendant's Miranda waiver and "consider whether those findings are 'supported by sufficient credible evidence in the record.'" State v. Tillery, 238 N.J. 293, 314 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). To ensure a

6

defendant's constitutional rights are protected, we "should engage in a 'searching and critical' review of the record." State v. Hreha, 217 N.J. 368, 381-82 (2014) (quoting State v. Pickles, 46 N.J. 542, 577 (1966)). That review "does not generally involve 'an independent assessment of the evidence.'" Id. at 384 (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "[A] trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. A.M., 237 N.J. 384, 395-96 (2019) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). In contrast, a trial court's legal conclusions should be reviewed de novo. Tillery, 238 N.J. at 314.

"[T]he right against self-incrimination . . . [is] 'guaranteed by the Fifth Amendment to the United States Constitution and [New Jersey's] common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503.'" Id. at 315 (quoting State v. Nyhammer, 197 N.J. 383, 399 (2009)). To preserve constitutional guarantees, a suspect subject to a custodial interrogation must be advised of these rights prior to the interview. Ibid.

### III. Defendant's waiver.

Defendant argues that the State failed to establish beyond a reasonable doubt that defendant knowingly and voluntarily waived his Miranda rights. While Posada handed defendant a written copy of the rights in Spanish and read the rights aloud to

A-4976-17T3

defendant in Spanish, defendant complains that the rights were read to him only once and he held the form for only two minutes before Posada took it from him. Furthermore, defendant did not sign the <u>Miranda</u> form, which had no signature line.

"The essential purpose of <u>Miranda</u> is to empower a person—subject to custodial interrogation within a police-dominated atmosphere—with knowledge of his basic constitutional rights so that he can exercise, according to his free will, the right against self-incrimination or waive that right and answer questions." <u>Nyhammer</u>, 197 N.J. at 406. When an individual waives <u>Miranda</u> rights, "the State must 'prove beyond a reasonable doubt that the suspect's waiver was knowing, intelligent, and voluntary in light of all the circumstances.'" <u>Tillery</u>, 238 N.J. at 316 (quoting <u>State v. Presha</u>, 163 N.J. 304, 313 (2000)). A person's <u>Miranda</u> waiver need not be explicitly stated nor be in writing to be effective. <u>Ibid.</u>; <u>State v. Warmbrun</u>, 277 N.J. Super. 51, 62 (App. Div. 1994).

"[A] knowing, intelligent, and voluntary waiver is determined by the totality of the circumstances surrounding the custodial interrogation based on the fact-based assessments of the trial court." <u>A.M.</u> 237 N.J. at 398. "Where the prosecution shows that a <u>Miranda</u> warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." <u>Tillery</u>, 238 N.J. at 316 (quoting <u>Berghuis v. Thomas</u>, 560 U.S. 370, 384

(2010)).  To determine the validity of the waiver, a court considers "the suspect's age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved."  A.M., 237 N.J. at 398 (quoting State v. Miller, 76 N.J. 392, 402 (1978)).  However, "a valid waiver does not require that an individual be informed of all information 'useful' in making his [or her] decision.'"  Nyhammer, 197 N.J. at 407 (quoting Colorado v. Spring, 479 U.S. 564, 576 (1987)).

In applying the above principals, the motion court found that the State established beyond a reasonable doubt that defendant knowingly, intelligently, and voluntarily waived his Miranda rights.  Our Supreme Court has directed that "[t]o eliminate questions about a suspect's understanding, the entire Miranda form should be read aloud to a suspect being interrogated, or the suspect should be asked to read the entire form aloud."  A.M., 237 N.J. at 400.

Defendant was provided a copy of the Miranda warnings in Spanish and was told by Posada to follow along the form while he read defendant the warnings.  The record does not support a finding that defendant's will was overborne.  Posada explained that while he could not speak about anything regarding the allegation until defendant indicated he understood his Miranda rights, defendant could at any time

during the interview stop talking and speak to an attorney. When defendant did not understand Posada's question, defendant felt comfortable asking for a clarification. Defendant orally waived his Miranda rights and chose to proceed with the interview.

Posada did not initially inform defendant why he was being interviewed. When no charges have been filed prior to a custodial interrogation, our Supreme Court has explained that they "are not aware of any case in any jurisdiction that commands that a person be informed of his suspect status in addition to his Miranda warnings." Nyhammer, 197 N.J. at 406. "In the typical case, explicit knowledge of one's status as a suspect will not be important for Miranda purposes." Id. at 407. While, the failure to be informed may be considered in the totality of circumstances, "Miranda warnings themselves strongly suggest, if not scream out, that a person is a suspect." Nyhammer, 197 N.J. at 407. Defendant was not charged criminally until after the interview.

Furthermore, a signed waiver is not required. Warmbrun, 277 N.J. Super. at 62. The motion court found that defendant did not have difficulty communicating with Posada after factoring in defendant's age, intelligence, and demeanor during the interview. The court's finding that defendant waived his rights is based on substantial credible evidence in the record and does not warrant reversal.

Defendant also argues his statement was involuntary. "There is substantial overlap between the factors that govern a court's determination of whether a Miranda waiver is valid and the factors that a court considers in its separate assessment of the voluntariness of a confession." Tillery, 238 N.J. at 316-17. Once again, "the suspect's age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved" should be considered. A.M., 237 N.J. at 398 (quoting Miller, 76 N.J. at 402)). These factors "should be assessed qualitatively, not quantitatively, and the presence of even one of those factors may permit the conclusion that a confession was involuntary." Id. at 384.

The motion court found that defendant's "statement was given voluntarily beyond a reasonable doubt." Having "viewed [the video recording of the] interview, and looking at the nature of the interrogation, the defendant's age, . . . his understanding of these rights, [and] the length of the detention which was about an hour and a half," the motion court determined that, under the totality of the circumstances, defendant was not subject to undue coercion, despite some repeated questioning.

11

Defendant argues that Posada's use of the Reid technique[2] was "a coercive interrogation method."  Posada did not testify that he employed the Reid technique, but rather said he was familiar with it.  No case supports the contention that using the Reid technique renders an adult's confession inadmissible.   A suspect will have a "natural reluctance . . . to admit to the commission of a crime and furnish details." Miller, 76 N.J. at 403.  Therefore, "an interrogating officer . . . [may] dissipate this reluctance and persuade the person to talk . . .  as long as the will of the suspect is not overborne."  Ibid.  Recognizing that the "[q]uestioning of a suspect almost necessarily involves the use of psychological factors," our Supreme Court held that "appealing to a person's sense of decency and urging him to tell the truth for his own sake are applications of psychological principals," that are permissible.  Id. at 405. Likewise, "[t]he fact that the police lie to a suspect does not, by itself, render a confession involuntary."  Galloway, 133 N.J. at 655.

---

[2]  "Interrogators trained in the Reid technique employ positive and negative incentives to induce a confession."  State ex rel. A.W., 212 N.J. 114, 148 (2012). "On the one hand, the interrogator confronts the suspect with accusations of guilt, assertions that may be bolstered by evidence, real or manufactured, and refuses to accept alibis and denials.  On the other hand, the interrogator offers sympathy and moral justification, introducing 'themes' that minimize the crime and lead suspects to see confession as an expedited means of escape."  Ibid. (quoting Saul M. Kassin et. al., Police-Induced Confessions: Risk Factors and Recommendations, 34 Law & Hum. Behav. 3, 7 (2010)).

Posada repeatedly told defendant that he did not believe him and that by lying, defendant was not helping himself. In particular, he said:

> Look Mr. Belaunde this is your opportunity to . . . tell the truth, this is your opportunity to write a good ending to this story. Look at yourself inside will you be able . . . to live with yourself lying to me? And leaving from here saying that nothing happened? Will you be able to live with that? So tell me what happen[ed] without shame because I am not here to judge you sir. I am here to understand what happened. That is why I, they call me an investigator not a judge[.] I am not here to judge. I am here to understand and through me, I can explain[,] I can tell people your story okay.

Posada also used defendant's religious beliefs to obtain a statement.

Defendant notes that in State v. L.H., 239 N.J. 22, 48 (2019), our Supreme Court explained that under the totality of the circumstances, "by falsely asserting or suggesting that a suspect's words will be used in his favor and not against him in court," the police contradicted the Miranda warnings. Here, Posada's methods did not contradict or undermined defendant's Miranda rights. The motion court did not err in finding that, under the totality of the circumstances, defendant's statement was voluntary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4976-17T3