**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2881-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

HERBERT E. TOZER,
a/k/a HERB TOZER,

     Defendant-Appellant.

_____

Submitted November 12, 2020 – Decided June 2, 2021

Before Judges Ostrer, Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 17-03-0223.

Joseph E. Krakora, Public Defender, attorney for appellant (Joshua D. Sanders, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (William P. Cooper-Daub, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Herbert E. Tozer conditionally pleaded guilty to aggravated manslaughter following the court's determination the State could introduce at trial statements he made during a custodial interrogation after his arrest. Defendant argues the court erred by failing to suppress the statements—in which he admitted fatally stabbing the victim—because he did not knowingly and voluntarily waive his Miranda[1] rights and the police failed to honor his invocation of his right to counsel. Having reviewed the record, we are satisfied there is sufficient credible evidence supporting the court's determination defendant knowingly and voluntarily waived his Miranda rights and did not invoke his right to counsel. We affirm the court's order permitting the State to introduce defendant's statements at trial, but we vacate the court's order requiring that defendant pay restitution as a condition of his sentence because the court did not consider defendant's ability to pay.

I.

The criminal charges against defendant arise out of the early morning stabbing of Robert Niemczura. Later the same day, police arrested defendant and interrogated him. Defendant admitted stabbing Niemczura because of

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2881-18

Niemczura's flirtations with defendant's girlfriend. Two days later, Niemczura died as a result of his injuries.

The court conducted a Rule 104 evidentiary hearing on the admissibility of defendant's statements during the interrogation.[2] In its written opinion following the hearing, the court found that at approximately 2:30 a.m. on January 10, 2017, Niemczura was stabbed twice in the neck at a motel. The motel manager called 911, and Niemczura told the 911 operator, and later an emergency medical technician, that "Herb Tozer" stabbed him. The court found Niemczura died two days later from "multiple stab wounds."

Seventeen hours after the stabbing, the police arrested defendant, who wore a shirt "stained with blood" and "had blood on his hands." The court explained defendant was then interrogated by a detective, and it made findings

---

[2]  At the Rule 104 hearing, the court also considered the State's request for a ruling on the admissibility of Niemczura's statements to a 911 operator and emergency medical technician identifying defendant as the person who stabbed him. The court also considered the admissibility of defendant's statements to a friend from whom defendant sought shelter following the stabbing. The friend testified that defendant, dressed in a blood-covered shirt, appeared at his home in the hours following the stabbing and said he had stabbed someone in an altercation over a "girl" and needed a place to "lay low" from the police. The court determined Niemczura's statements to the 911 operator and emergency medical technician, and defendant's statements to his friend, were admissible. Defendant does not appeal from the court's determinations concerning the admissibility of that evidence.

A-2881-18

based on its review of the recording of the interrogation. The court found "defendant did not appear to be intoxicated and appeared appropriately oriented as to where he was and what was happening." The court observed that "[d]efendant gave appropriate responses to all [of the detective's] questions and only in rare and less material instances did defendant appear to have any confusion."

The court noted defendant told the detective he had an eighth-grade education; he could read, write, and understand the English language; and he was not under the influence of alcohol or any drug. The court quoted defendant's statements acknowledging his understanding of each of his <u>Miranda</u> rights as the detective read them from a <u>Miranda</u> warnings and waiver card. The court quoted from the interrogation, during which the detective asked defendant to read the <u>Miranda</u> warnings and place his initials next to each. The detective then left the interrogation room, and the court noted defendant then "review[ed] and initial[ed] the <u>Miranda</u> [c]ard."

A-2881-18

The court also quoted the following dialogue that occurred after defendant placed his initials next to each of the listed Miranda rights on the card and the detective returned to the interrogation room:[3]

> DETECTIVE: You all right, all right the date is January 10, 2017, the time is 8:20[ ]p[.]m[.]  All right what I want you to do is I want to read this waiver.  Can you read that, or do you want me to read it to ya?
>
> DEFENDANT: I have read this . . . .

The court found that when defendant said, "I have read this," he referred to the "[w]aiver of [r]ights statement from the Miranda card."  The "waiver of rights" section of the form states:

> I have read this statement of my rights concerning the offense(s) under investigation.  I understand and know what I am doing.  No promises, benefits, reward[,] or threats have been made to me and no pressure or coercion of any kind has been used against me.  Understanding my rights as stated above, I am now willing to discuss the offense(s) under investigation.

Listed immediately following the "waiver of rights" statement are the phrases "Without an attorney" and "In the presence of my attorney."  Each phrase is preceded by a set of brackets that provided defendant with a space to

---

[3]  The Miranda card, which was admitted in evidence at the Rule 104 hearing, shows defendant's initials next to each of the listed Miranda rights.

A-2881-18

check off whether he opted to "discuss the offense(s) under investigation" without counsel or in the presence of counsel.

In its decision, the court further quoted the continuing colloquy between the detective and defendant during the interrogation:

> DETECTIVE: You don't have to read it out loud. I just want to make sure that you read it and you understand it. I haven't coerced you, I haven't tried to like ya know trick you or make you promises or anything like that.
>
> DEFENDANT: Ah-huh.
>
> DETECTIVE: Okay do you want to speak to me right now?
>
> DEFENDANT: I mean it's not really gonna matter.
>
> DETECTIVE: Okay then just you want to, if you want to continue talking you want to check right there, "without," right there "without an attorney" and sign the um waiver below.
>
> DEFENDANT: Maybe I should wait for an attorney, but it ain't gonna matter, I can't afford an attorney anyway. Sign?

Based on its review of the recording, the court found that as defendant made the last statement, he simultaneously "[c]heck[ed] the box" on the form stating "without an attorney," and asked, "Sign?", to which the detective said, "Yep." Defendant then signed the <u>Miranda</u> rights warning and waiver card as the detective said, "Okay, you checked ah '[w]ithout an attorney.'"

6

Based on its observations of "defendant's demeanor, inflection and body language," the court found defendant's statement, "Maybe I should wait for an attorney but it ain't gonna matter," "[was] not particularly directed at the detective," "appear[ed] clearly to be part of defendant's internal monologue that he . . . verbalized," and was a "statement [that] is almost parenthetical in the context of the interrogation." The court found defendant was "essentially thinking-out-loud" when he said, "Maybe I should wait for an attorney."

The court also determined the detective's statement, "Ok, you checked 'Without an attorney,'" constituted a follow-up question about defendant's intention to answer questions without counsel. The court found that although defendant's answer to the question is "unintelligible" on the recording, "it appears that the officer understood" defendant responded in the affirmative.

The court concluded that based on the totality of the circumstances presented, defendant's reference to an attorney "was not an invocation of the right to counsel or even an ambiguous one." The court found defendant indicated on the Miranda waiver card that he intended to answer questions without an attorney after making his "parenthetical" statement, and the detective confirmed defendant's decision by asking if defendant had checked off on the card that he chose to proceed "without an attorney." The court also noted

7

defendant's history and experience—including his twenty-two prior arrests, his invocation of his right to remain silent during a prior arrest, and his letters to the court in prior matters requesting assignment of a "pool lawyer"—supported its determination defendant knowingly and voluntarily waived his rights to remain silent and to counsel.

Following the court's decision on the admissibility of defendant's statements and the other issues presented during the Rule 104 hearing, defendant conditionally pleaded guilty to aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1).[4] The court sentenced defendant to a twenty-eight-year prison term subject to the requirements of the No Early Release Act, N.J.S.A. 2C:43-7.2. The court also ordered that defendant pay $5,000 in restitution to the Violent Crimes Compensation Board as reimbursement for its payment of Niemczura's funeral expenses. This appeal followed.

Defendant presents the following arguments for our consideration:

POINT I

[DEFENDANT'S] CUSTODIAL STATEMENT WAS OBTAINED IN VIOLATION OF FEDERAL AND

---

[4] Defendant was charged in an indictment with murder, N.J.S.A. 2C:11-3(a)(1), aggravated assault, N.J.S.A. 2C:12-1(b)(1), hindering his own apprehension, N.J.S.A. 2C:29-3(b)(1), and two possessory weapons offenses. For purposes of his plea, the murder charge was amended to aggravated manslaughter.

STATE LAW, AND THEREFORE SHOULD NOT HAVE BEEN ADMITTED AT TRIAL.

A. Given That The Statutory Limitations For The Assignment Of Public Defenders In New Jersey And The Promises Of <u>Miranda</u> Cannot Be Harmonized, The Admission Of [Defendant's] Statement Violates [Defendant's] Constitutional Rights.

B. Because The Police Failed To Stop Questioning And Seek Clarification After [Defendant's] Ambiguous Assertion, The Ensuing Statement Was Improperly Obtained And Should Have Been Suppressed By The Trial Court.

<u>POINT II</u>

[DEFENDANT'S] PURPORTED WAIVER OF HIS <u>MIRANDA</u> RIGHTS, AND HIS SUBSEQUENT CUSTODIAL STATEMENT, WERE NOT KNOWINGLY AND VOLUNTARILY GIVEN, AND THEREFORE SHOULD NOT HAVE BEEN ADMITTED AT TRIAL.

<u>POINT III</u>

THE COURT FAILED TO CONDUCT A RESTITUTION HEARING TO DETERMINE [DEFENDANT'S] ABILITY TO PAY.

<u>POINT IV</u>

[DEFENDANT'S] SENTENCE IS EXCESSIVE, UNDULY PUNITIVE, AND MUST BE REDUCED.

Defendant argues his conviction should be reversed and the matter should be remanded for further proceedings because the court erred by finding he knowingly and voluntarily waived his Miranda rights and did not invoke his right to counsel. Defendant also contends the police violated his right to fundamental fairness by advising him at the outset of the interrogation that he was entitled to counsel even if he could not afford one when, in actuality, he was not entitled to the services of an assigned counsel until he was formally charged with an indictable offense. See N.J.S.A. 2A:158A-5.

A.

We first consider defendant's claim the court erred by finding he knowingly and voluntarily waived his Miranda rights. He generally suggests, without citing to any competent evidence, that he suffered from some undefined cognitive deficit or mental disease, or from a lack of education, that rendered him unable to fully understand his Miranda rights and to knowingly waive them. We are not persuaded.

"The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503."

State v. S.S., 229 N.J. 360, 381 (2017) (quoting State v. Nyhammer, 197 N.J. 383, 399 (2009)). To protect a person's right against self-incrimination, a person in custody

> must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.
>
> [Miranda v. Arizona, 384 U.S. 436, 479 (1966).]

The purpose of the Miranda warnings is to protect a suspect from the "inherently coercive atmosphere of custodial interrogation." State v. A.M., 237 N.J. 384, 397 (2019).

A suspect may waive his Miranda rights, but the waiver will not be valid unless it is "knowing, intelligent, and voluntary in light of all the circumstances" and is not "the product of police coercion." State v. Presha, 163 N.J. 304, 313 (2000). The State has the burden of "'prov[ing] beyond a reasonable doubt that the suspect's waiver [of Miranda rights] was knowing, intelligent, and voluntary' . . . based upon an evaluation of the totality of the circumstances." State v. Yohnnson, 204 N.J. 43, 59 (2010) (citations omitted) (quoting Presha, 163 N.J. at 313); see also State v. Tillery, 238 N.J. 293, 316 (2019).

A-2881-18

In its assessment of the totality of the circumstances, a court must determine "whether the suspect understood that he [or she] did not have to speak, the consequences of speaking, and that he [or she] had the right to counsel before doing so if he [or she] wished." A.M., 237 N.J. at 397 (quoting Nyhammer, 197 N.J. at 402). Factors relevant to this determination "include the suspect's age, education[,] . . . intelligence[, and previous encounters with the law,] advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature[,] and whether physical punishment or mental exhaustion was involved." State v. Miller, 76 N.J. 392, 402 (1978); see also Tillery, 238 N.J. at 317.

We apply a deferential standard of review to a "court's factual findings as to [a] defendant's Miranda waiver." Tillery, 238 N.J. at 314. We must determine whether the court's "findings are 'supported by sufficient credible evidence in the record,'" ibid. (quoting S.S., 229 N.J. at 374), and we will disturb the court's findings "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction,'" ibid. (quoting A.M., 237 N.J. at 395). We apply that standard even where, as here, "the trial court's findings are premised on a recording or documentary evidence that [we] may also review." Ibid. (citing S.S., 229 N.J. at 380-81). "However, we owe no deference to conclusions of

12

law made by lower courts in suppression decisions, which we instead review de novo."  State v. Boone, 232 N.J. 417, 426 (2017).

Here, the court's finding the State proved beyond a reasonable doubt that defendant knowingly and voluntarily waived his Miranda rights is amply supported by the record.  The court found defendant was alert and oriented, and answered the detective's questions in an appropriately responsive manner. Defendant acknowledged he could read, write, and understand the English language.  The detective read each of the Miranda rights to defendant, and defendant verbally acknowledged his understanding of each right.  Defendant read the Miranda rights on the written card and placed his initials next to each of the listed rights after he read them.  Defendant also read the waiver of rights, affixed his signature to the waiver card stating he understood his rights, and voluntarily decided to waive his rights and respond to the detective's questions.

The court also properly considered defendant's lengthy history of prior arrests, evidence showing he invoked his right to remain silent following a prior arrest, and defendant's written communications to the court in previous criminal prosecutions in which he requested a "pool lawyer" and sought to be released "R.O.R."—on his own recognizance.  The court correctly reasoned defendant's prior history demonstrated a familiarity with his Miranda rights even before the

detective advised defendant of his rights following his arrest for Niemczura's stabbing. See Tillery, 238 N.J. at 317 (noting a defendant's "familiarity with the criminal justice system" is a "[f]actor[] commonly considered" in assessing whether a defendant waived his or her Miranda rights (first alteration in original)); State v. Hreha, 217 N.J. 368, 383 (2014) (same).

We reject defendant's claim he could not have knowingly and voluntarily waived his Miranda rights because he suffered from "some cognitive deficit." The argument is untethered to any evidence, and the court did not find defendant suffered from any cognitive deficit or from any form of intoxication. Additionally, even if the record suggested defendant had a cognitive deficit— and it does not—that would not be dispositive of whether defendant knowingly and voluntarily waived his Miranda rights. See, e.g., State v. Morton, 155 N.J. 383, 449-50 (1998) (finding the defendant voluntarily and knowingly waived his Miranda rights notwithstanding his "limited intelligence" because he graduated high school, completed a course in law enforcement, and later invoked his right to remain silent after providing statements); State v. Cabrera, 387 N.J. Super. 81, 97, 102 (App. Div. 2006) (holding the confession of a defendant with a middle-school education and low I.Q. was made voluntarily and was admissible); State v. Carpenter, 268 N.J. Super. 378, 385-86 (App. Div. 1993)

(determining sufficient credible evidence supported the trial court's finding that an illiterate but "street wise" defendant with an I.Q. of 71 knowingly and voluntarily waived his <u>Miranda</u> rights).

The record supports the court's finding defendant was properly advised of his <u>Miranda</u> rights, understood them, and knowingly and voluntarily waived them. The court considered the totality of the circumstances in making its findings and conclusion, and defendant offers no basis supporting a reversal of the court's decision.

B.

Defendant also contends the court erred by rejecting his claim that following the waiver of his <u>Miranda</u> rights, the detective should have ceased all questioning because defendant invoked his right to counsel. Defendant argues his statement, "Maybe I should wait for an attorney, it ain't gonna matter I can't afford an attorney either way. Sign?", constituted an invocation of his right to counsel and that questioning should have ceased the moment he uttered those words.

As noted, a defendant's "right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E.

15

503." S.S., 229 N.J. at 381 (quoting Nyhammer, 197 N.J. at 399). If a suspect "indicates in any manner and at any stage of the process that he [or she] wishes to consult with an attorney before speaking there can be no questioning," State v. Alston, 204 N.J. 614, 619-20 (2011) (quoting Miranda, 384 U.S. at 444-45), and the "interrogation may not continue until either counsel is made available or the suspect initiates further communication sufficient to waive the right to counsel," id. at 620.

"[A] suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel." Id. at 622 (quoting State v. Reed, 133 N.J. 237, 253 (1993)). Our Supreme Court has explained that "if the words amount to even an ambiguous request for counsel, the questioning must cease, although clarification is permitted; if the statements are so ambiguous that they cannot be understood to be the assertion of a right, clarification is not only permitted but needed." Id. at 624.

Although a determination of whether a suspect invoked the right to counsel may "turn[] on whether the suspect's words amounted to an assertion of the right to counsel at all," ibid., a court must not view the suspect's words in isolation, S.S., 229 N.J. at 382. "Words used by a suspect are not to be viewed

in a vacuum," but instead must be considered "in 'the full context in which they were spoken.'" Ibid. (quoting State v. Roman, 382 N.J. Super. 44, 64 (App. Div. 2005)).

In Alston, the Court found the defendant's statement, "'should I not have a lawyer?' was, in actuality, not an assertion of a right, ambiguous or otherwise," because "it was a question . . . that amounted to [the] defendant's request for advice about what the detective thought that defendant should do." 204 N.J. at 625-26. The officer responded appropriately by asking, "[do y]ou want a lawyer?" Id. at 626. (alteration in original). The defendant then made it clear he did not want a lawyer, stating, "No, I am asking you guys, man." Ibid.

In determining the defendant's statement did not constitute an invocation of his right to counsel, the Court's "analysis of the words th[e] defendant chose" was in part based on its review of the audio recording of the interrogation. Id. at 625, 625 n.2. The Court explained the "audio recording revealed both pauses and inflections of tone and emphasis in the voices that [made] clear the meaning of the words that were used by the participants" and "therefore [bore] upon the Court's analysis to the extent that it revealed things that the transcript cannot." Ibid. Thus, beyond the words used by the defendant during the interrogation, the Court relied "in particular [on] the inflections and tone revealed by the audio

tape recording" to conclude the "defendant's statements to the police were not ambiguous assertions of his right to counsel." Id. at 627.

The motion court engaged in a similar analysis here. The court did not consider defendant's words in isolation. It analyzed defendant's words and the manner and context in which they were conveyed, considered defendant's "demeanor, inflection[,] and body language," and determined defendant's statements did not constitute even an ambiguous invocation of his right to counsel. The record supports the court's conclusion.

Defendant's statement, "Maybe I should wait for an attorney," followed the detective's instruction that if defendant "want[ed] to continue talking," he should place a check on the portion of the Miranda card indicating he wanted to speak "without an attorney" and sign the waiver of rights on the card. It was in response to that instruction that defendant said, "Maybe I should wait for an attorney," but his statement did not end there. Without pause, and in the same breath, defendant continued, stating, "but it ain't gonna matter, I can't afford an attorney either way." As the court found as a matter of fact, as he made the continuous statement, defendant simultaneously placed a check on the waiver form clearly and unequivocally indicating he decided to speak with the detective "without an attorney."

The court properly considered the totality of those circumstances in its assessment of whether defendant's reference to an attorney constituted an invocation of his right to have counsel present before he answered the detective's questions. Defendant's statement that "it ain't gonna matter, I can't afford an attorney anyway" immediately qualified his statement, "Maybe I should wait for an attorney." The only logical interpretation of the combined statement is that defendant pondered for a brief moment if he should wait for an attorney, but at the same time, recognized waiting would not matter because he could not afford an attorney. We reject defendant's contention the statement demonstrated confusion about his Miranda rights or his entitlement to assigned counsel. To the contrary, defendant's statement constituted an accurate and precise recognition, apparently based on his numerous prior arrests and interactions with law enforcement, that he would not become eligible for assigned counsel until he was formally charged with an indictable offense. And, again, defendant's simultaneous completion of the form, by indicating he opted to speak to the detective without an attorney, made manifest his decision to do so.

Defendant's statements and actions, when considered in their totality, do not support a finding that he invoked his right to counsel, either ambiguously or otherwise. Instead, as the motion court found, defendant first thought-out-loud

that "[m]aybe" he should wait for an attorney, immediately decided waiting would not matter, and, consistent with that decision, affirmatively indicated that he decided to speak to the detective without an attorney by checking off that option on the waiver card and signing the card. We agree with the motion court's determination that those circumstances established defendant made a clear and unequivocal decision to speak to the detective "without an attorney."

Because defendant did not ambiguously assert his right to counsel, the detective was not required to clarify defendant's statement before further questioning. Cf. Alston, 204 N.J. at 624 (observing clarification is permissible, and sometimes necessary, when a defendant's statement is ambiguous as to asserting a defendant's right). Nonetheless, the detective made inquiry to confirm defendant's choice. As the court determined, the detective asked defendant if he checked "[w]ithout an attorney" on the waiver form, and, although defendant's response was inaudible, the court inferred from its review of the recording that the detective understood defendant responded in the affirmative. Defendant does not challenge the court's finding, and we otherwise defer to it. See S.S., 229 N.J. at 374, 379. It further supports the court's determination the detective confirmed defendant's otherwise unequivocal decision to proceed without counsel.

20

For those reasons, we reject defendant's claim the court erred by finding he invoked his right to counsel, and we affirm the court's order allowing the State to introduce defendant's statements during the custodial interrogation at trial.

C.

We next consider defendant's claim he was denied his right to fundamental fairness during the custodial interrogation because he was advised he would be provided with an attorney if he could not afford one, but, in actuality, he was not entitled to counsel assigned by the Office of Public Defender until he was formally charged with an offense. See N.J.S.A. 2A:158A-5 (providing that it is "the duty of the Public Defender to provide for the legal representation of any indigent defendant who is formally charged with the commission of an indictable offense"). Defendant contends it was misleading and therefore fundamentally unfair to advise him he was entitled to counsel if he could not afford one when he could not obtain an assigned counsel until after he was formally charged.

We reject defendant's argument because it was not raised before the trial court. See State v. Robinson, 200 N.J. 1, 20 (2009). We also observe that in Duckworth v. Eagan, the United States Supreme Court explained its decision in

21

Miranda "does not require that attorneys be producible on call, but only that the suspect be informed . . . that he [or she] has the right to an attorney before and during questioning, and that an attorney would be appointed for him [or her] if he [or she] could not afford one."  492 U.S. 195, 204 (1989).  That is precisely the advice the detective provided defendant.

The Court further stated that where "the police cannot provide appointed counsel" to a suspect because state law provides only for the appointment of counsel at an initial appearance in court, "Miranda requires only that the police not question a suspect unless he waives his right to counsel."  Ibid.  Here, defendant could not be provided with assigned counsel until he was formally charged, N.J.S.A. 2A:158A-5, but, consistent with the Court's decision in Duckworth, the detective questioned defendant only after defendant waived his Miranda rights, including his right to counsel.

The doctrine of fundamental fairness upon which defendant relies is "to be sparingly applied" and only "in those rare cases where not to do so will subject the defendant to oppression, harassment, or egregious deprivation." State v. Miller, 216 N.J. 40, 71-72 (2013) (citations omitted).  We discern no basis to apply the doctrine where, as here, the police fully informed defendant of his rights in precise accordance with the Supreme Court's decisions in

Miranda and Duckworth. For the same reasons, we reject defendant's assertion we should hold the State and United States constitutions require that a suspect be provided with assigned counsel during a custodial interrogation prior to the filing of a formal charge of an indictable offense.

III.

Defendant claims the twenty-eight-year sentence imposed by the court is excessive because he "can be adequately punished for [the aggravated manslaughter] with a lesser sentence." We find no merit to the contention and affirm the sentence imposed substantially for the detailed reasons provided by the sentencing court. R. 2:11-3(e)(2).

We add only that we review a court's sentencing decision under the abuse of discretion standard, State v. R.Y., 242 N.J. 48, 73 (2020), and we may not "substitute [our] judgment for those of our sentencing courts," State v. Miller, 237 N.J. 15, 28 (2019) (quoting State v. Case, 220 N.J. 49, 65 (2014)). We

> must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

23

> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Defendant does not claim the court violated the sentencing guidelines or that the court's findings of the aggravating and mitigating factors were not supported by competent and credible evidence. Indeed, the court made detailed findings concerning the aggravating and mitigating factors, see N.J.S.A. 2C:44-1(a) to (b), carefully weighed the factors, and imposed a sentence within the statutory range, see N.J.S.A. 2C:11-4(c), for aggravated manslaughter in accordance with the applicable sentencing standards. The court's findings support the imposition of the twenty-eight-year sentence, and, based on the record presented, there is nothing about the sentence that shocks the judicial conscience. See, e.g., R.Y., 242 N.J. at 73-74 (affirming a defendant's sentence because the trial court's findings regarding the aggravating and mitigating factors were "supported by 'competent credible evidence'" (quoting State v. Bieniek, 200 N.J. 601, 608 (2010))). We therefore affirm the custodial sentence imposed by the court.

### IV.

Defendant also contends the court erred by ordering that he pay $5,000 in restitution without first considering his ability to pay. We review defendant's

contention under the plain error standard, R. 2:10-2, because he did not argue before the trial court that he did not have the ability to pay restitution as a condition of his sentence. Under this standard, we will not reverse a court's decision unless it is "clearly capable of producing an unjust result." Ibid.

A court "shall sentence a defendant to pay restitution" where "[t]he defendant is able to pay or, given a fair opportunity, will be able to pay restitution." N.J.S.A. 2C:44-2(b)(2). Although a sentencing "court [has] considerable discretion in evaluating a defendant's ability to pay" restitution, State v. Newman, 132 N.J. 159, 169 (1993), we will vacate a restitution order "[w]hen a sentencing court has not conducted a meaningful evaluation of a defendant's ability to pay," RSI Bank v. Providence Mut. Fire Ins., 234 N.J. 459, 478 (2018). In other words, "a restitution order will not survive appellate review if the sentencing court has not . . . determined whether the defendant will be capable of paying the amount required." Ibid.

The court ordered that defendant pay $5,000 in restitution without addressing, or making any findings concerning, his ability to pay. The lack of an assessment of defendant's ability to pay is clearly capable of producing an unjust result because the record shows defendant has been unemployed since

2014 and has no assets or income.[5] See State v. McLaughlin, 310 N.J. Super. 242, 263-65 (App. Div. 1998) (finding plain error and remanding when a court ordered a defendant to pay restitution without first conducting an ability-to-pay hearing because neither the sentencing transcript nor the presentence report gave any indication as to the defendant's ability to pay). We therefore vacate the court's order requiring that defendant pay $5,000 in restitution and remand for the court to reconsider its restitution order based on a determination of defendant's ability to pay.

In sum, we affirm the trial court's order finding defendant's statements during the custodial interrogation were admissible at trial, and we affirm defendant's custodial sentence. We vacate the order requiring that defendant pay $5,000 in restitution and remand for the court to reconsider and determine the restitution amount, if any, based on defendant's ability to pay.

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] We acknowledge that one third of a prisoner's wages may be allocated toward restitution, N.J.S.A. 30:4-92, but the record does not reflect defendant's prospects for income-producing work in prison or the likely remuneration.

26

A-2881-18