JUSTICE SOLOMON delivered the opinion of the Court.
*216 **389 In this appeal, we are called upon to decide whether under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), defendant A.M., who speaks limited English, waived his constitutional right against self-incrimination pursuant to the Fifth Amendment to the United States Constitution.
Before his interrogation, defendant reviewed a Spanish-language Miranda form while a Spanish-speaking officer read aloud defendant's rights. The officer pointed out the waiver portion of the form and defendant then signed it. Afterward, defendant made incriminating statements in response to police officers' questions. The trial court denied defendant's motion to suppress his statement, finding that defendant knowingly, intelligently, and voluntarily waived his Miranda rights. The Appellate Division reversed, concluding the State failed to meet its burden to show an express waiver.
Although the better practice would have been to read aloud the form's waiver portion to defendant, we rely on the trial court's well-supported observations and factual findings and reverse the Appellate Division's judgment. We therefore need not reach the issue of implied waiver.
**390 I.
A.
We garner the following facts from the record of proceedings before the trial court on defendant's motion to suppress his statement to police.
Defendant was alone in his apartment with his fourteen-year-old step-granddaughter, A.I., when he asked her to try on her bathing suit to see if it fit. After she changed into the bathing suit, defendant hugged A.I. from behind, touching her breasts and vagina over her bathing suit, and inserted at least one finger into her vagina. A.I. told defendant to stop, pushed him away from her, and left the apartment.
After learning of the incident, A.I.'s mother contacted the Bergen County Prosecutor's Office. Officers went to defendant's *217 home and transported him to the Bergenfield Police Department. One member of the Prosecutor's Office and two members of the Bergenfield Police Department conducted an interview of defendant. Because defendant spoke little English and stated that he was more comfortable with Spanish, Detective Richard Ramos assisted in translating the interview from English to Spanish. The entire interview was video-recorded to a DVD and later transcribed in English by a clerk-typist employed by the Bergen County Prosecutor's Office.
Before beginning the interview, Detective Ramos reviewed with defendant a Spanish-language form prepared by the Bergen County Prosecutor's Office, which set forth defendant's Miranda rights. The form listed each of defendant's Miranda rights in Spanish followed by "Entiende Usted?" (Do you understand?), "Respuesta" (Response) and "Iniciales" (Initials). At the bottom of the form is a waiver paragraph, which states in Spanish, "I have read the above declaration of my rights and they have been read aloud. I understand my rights. I am willing to answer questions without having a lawyer present. No promise or threats have been made to me and **391 no pressure or coercion has been used against me." Spaces for signatures follow the waiver paragraph.
Detective Ramos read defendant his Miranda rights from the Spanish-language form, pausing after reading each one to ask defendant in Spanish if he understood. Defendant replied "sí" (yes) each time. Thereafter, Detective Ramos wrote "sí" after each right, turned the form to defendant and stated in Spanish, "If you want, you can read what I told you and you only have to put your initials on each line. That's the same thing I read." Defendant replied "Uh-huh." Defendant initialed each line and turned the form to Detective Ramos.
Detective Ramos then handed the form to defendant to review the waiver portion and asked in Spanish, "Do you understand?" Defendant replied, "Sí," and Detective Ramos told defendant in Spanish, "Write your name in the line[:] complete," pointing to a signature line. Defendant signed the form where Detective Ramos had pointed, but Detective Ramos turned the form back to defendant, again pointing to the bottom part of the form and stated, "And you have to sign here, the line is not there, but you have to sign." Defendant signed the form before turning it back to Detective Ramos, who then also signed it.
Detective Lucas conducted the remainder of the interview, and Detective Ramos translated as needed. During the course of the interrogation, defendant admitted to touching his step-granddaughter inappropriately.
B.
Defendant was indicted by a Bergen County grand jury for first-degree aggravated sexual assault, contrary to N.J.S.A. 2C:14-2(a)(2)(a) ; second-degree sexual assault, contrary to N.J.S.A. 2C:14-2(c)(4) ; two counts of third-degree aggravated criminal sexual contact, contrary to N.J.S.A. 2C:14-3(a) ; and third-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(a).
**392 Defendant challenged the admission of his statement to police, contending that the State failed to prove beyond a reasonable doubt that he knowingly, intelligently, and voluntarily waived his Miranda rights and that Detective Ramos inadequately translated the interview, denying him his rights to due process and equal protection.
At the hearing on defendant's suppression motion, Detective Ramos testified *218 about his background and noted that, based on his personal experience speaking with both adults and children in Spanish, defendant "took his time reading [the form]. It appears to [him] that [defendant] did read it." Detective Ramos acknowledged that he did not ask defendant any questions to determine defendant's educational background or literacy level.
Detective Ramos also testified about discrepancies between the video recording and the transcript of defendant's statement and explained that he was "paraphrasing" defendant's answers.
After watching the DVD of defendant's interview, the trial court denied defendant's motion to suppress in a written opinion, finding that "defendant appeared calm during the interview, appeared to understand the questions posed to him in both English and Spanish, and was able to answer the questions forthrightly." The court also explained that defendant seemed "alert and cognizant" while the form was explained to him and that "it [was] clear from the video tape that defendant was given an opportunity to read the waiver paragraph and signed the waiver portion, and did in fact review the waiver portion before signing it." Finally, referring to defendant's expressed preference that the interview be conducted in Spanish, the court added that, "[i]f defendant had any problem reading the waiver portion of the form, written in Spanish as he had requested, it is clear to this court that he would have voiced such difficulty." The trial court concluded that, considering the totality of the circumstances, defendant knowingly, intelligently, and voluntarily waived his Miranda rights.
Defendant pled guilty to second-degree sexual assault while reserving his right to appeal the denial of his motion to suppress.
**393 The court sentenced defendant to a six-year custodial term with Parole Supervision for Life, Megan's Law and Nicole's Law restrictions, and applicable fines and fees.
C.
Defendant appealed the trial court's denial of his motion to suppress. In a published opinion, the Appellate Division reversed the decision of the trial court, finding the State failed to prove defendant made a voluntary decision to waive his Miranda rights. State v. A.M., 452 N.J. Super. 587, 590, 178 A.3d 719 (App. Div. 2018). Although the panel applied the deferential standard of review we adopted in State v. S.S., 229 N.J. 360, 379-81, 162 A.3d 1058 (2017), the panel found that "[t]he [trial] judge's analysis improperly shift[ed] the burden of proof to defendant to alert the interrogating officers about any difficulty he may be having understanding the ramifications of a legal waiver," A.M., 452 N.J. Super. at 599, 178 A.3d 719.
The panel observed that the trial court's decision illustrated "a fundamental misunderstanding of the legal principles governing a motion to suppress under Miranda" because the court did not address Detective Ramos's failure to ask about defendant's education or literacy level, his failure to read the waiver aloud, or his failure to explain to defendant what a Miranda waiver entails. Id. at 598-99, 178 A.3d 719.
Observing that the record presented to the motion judge included a transcript of defendant's statement but did not contain any information about the transcriber's qualifications as a translator, the panel also challenged the interrogation's transcription. See id. at 599-600, 178 A.3d 719 ("The mere fact of having a Hispanic last name does not create a rational basis to infer anything about a person's linguistic ability.").
*219 Additionally, a concurring opinion sets forth perceived "inherent constitutional flaws" in relying on police officers, rather than certified neutral translators, as interpreters during custodial interrogations. Id. at 600-04, 178 A.3d 719. The concurrence calls upon **394 the Attorney General to "develop appropriate guidelines to assist county prosecutors and municipal police departments on how to interrogate limited English proficient suspects." Id. at 604, 178 A.3d 719.
We granted the State's petition for certification. 234 N.J. 192, 189 A.3d 897 (2018). We also granted the Attorney General, the Office of the Public Defender, and the American Civil Liberties Union of New Jersey (ACLU) leave to participate as amici curiae.
II.
A.
The State asks us to reverse the Appellate Division's decision and to clarify whether Miranda waivers must be obtained with the use of "impartial participants" for non-English-speaking suspects. The State contends that the Appellate Division erred by considering Detective Ramos's status as a police officer and his paraphrasing of some of defendant's answers. The State claims that the panel should instead have deferred to the trial court's factual findings in assessing whether defendant waived his Miranda rights under the totality-of-the-circumstances. In the alternative, the State argues that defendant impliedly waived his Miranda rights by stating that he understood his Miranda warnings and by actively participating in the interview. Finally, the State argues that the panel improperly suggests that the transcriber's status as a law enforcement employee establishes a flaw in the translation.
The Attorney General asserts many of the same arguments as the State and also argues that translations of interviews by certified neutral translators are not required under the court rules, rules of evidence, or any case law. The Attorney General stresses that defense counsel did not challenge the interview transcript despite the trial judge's permission to do so.
B.
Defendant asks this Court to affirm the Appellate Division decision and require qualified neutral interpreters in all interrogations **395 where suspects speak limited English. Relying on State v. Bey (II), 112 N.J. 123, 124, 548 A.2d 887 (1988), defendant argues that the State failed to meet its "heavy burden" of proving his Miranda waiver was "knowing, intelligent, and voluntary in light of all of the circumstances." Defendant contends that Detective Ramos's translation inaccuracies were prejudicial and challenges the use of law enforcement employees for both interrogation and transcription.
In addition to agreeing with defendant that qualified neutral interpreters should be required in all suspect interrogations, the Public Defender urges the Court to require that law enforcement have suspects read aloud the waiver portion of Miranda forms to establish literacy and comprehension.
The ACLU contends that defendant's review of the waiver paragraph did not demonstrate his understanding of its contents and the State failed to meet its burden to produce evidence of defendant's literacy or comprehension. The ACLU reiterates that the State has the burden of proving, beyond a reasonable doubt, that defendant's waiver was intelligent and knowing, and maintains that the State offered no evidence beyond defendant's failure to note any lack of understanding.
*220 III.
A.
We begin our discussion by outlining our circumscribed review of a trial court's decision in a motion to suppress. "Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.' " S.S., 229 N.J. at 374, 162 A.3d 1058 (quoting State v. Gamble, 218 N.J. 412, 424, 95 A.3d 188 (2014) ). Therefore, "[a] trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.' "
**396 State v. Elders, 192 N.J. 224, 244, 927 A.2d 1250 (2007) (quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964) ).
In S.S., we extended that deferential standard of appellate review to "factual findings based on a video recording or documentary evidence" to ensure that New Jersey's trial courts remain "the finder of the facts." 229 N.J. at 381, 162 A.3d 1058 (quoting Fed. R. Civ. P. 52(a) advisory committee's note to 1985 amendment). We explained that "[p]ermitting appellate courts to substitute their factual findings for equally plausible trial court findings is likely to 'undermine the legitimacy of the [trial] courts in the eyes of litigants, multiply appeals by encouraging appellate retrial of some factual issues, and needlessly reallocate judicial authority.' " Id. at 380-81, 162 A.3d 1058 (second alteration in original) (quoting Fed. R. Civ. P. 52(a) advisory committee's note to 1985 amendment).
An appellate court owes no deference, however, to "conclusions of law made by lower courts in suppression decisions," which are reviewed de novo. State v. Boone, 232 N.J. 417, 426, 180 A.3d 1110 (2017) (citing State v. Watts, 223 N.J. 503, 516, 126 A.3d 1216 (2015) ).
B.
Turning to the law governing a defendant's waiver of his Miranda rights, we first note that "[t]he right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." S.S., 229 N.J. at 381-82, 162 A.3d 1058 (quoting State v. Nyhammer, 197 N.J. 383, 399, 963 A.2d 316 (2009) ). To ensure that a person subject to custodial interrogation is "adequately and effectively apprised of his rights," the United States Supreme Court developed constitutional safeguards -- the Miranda warnings. Miranda, 384 U.S. at 467, 86 S.Ct. 1602. Those warnings require that during custodial interrogation a defendant must be informed "that he has the right to remain silent," id. at 467-68, 86 S.Ct. 1602, that **397 anything he says "can and will be used against [him] in court," id. at 469, 86 S.Ct. 1602, and that he has "the right to have counsel present at the interrogation," ibid.
The administration of Miranda warnings ensures that a defendant's right against self-incrimination is protected in the inherently coercive atmosphere of custodial interrogation. See State v. Reed, 133 N.J. 237, 255, 627 A.2d 630 (1993). Likewise, a waiver of a defendant's Miranda rights may "never be the product of police coercion," but must instead be "knowing, intelligent, and voluntary in light of all of the circumstances." State v. Presha, 163 N.J. 304, 313, 748 A.2d 1108 (2000). A waiver may be "established even absent formal or express statements." Berghuis v. Thompkins, 560 U.S. 370, 383, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). An "explicit statement" is not necessary as "[a]ny clear *221 manifestation of a desire to waive is sufficient," and instead we look for a "showing of a knowing intent." State v. Hartley, 103 N.J. 252, 313, 511 A.2d 80 (1986) (quoting State v. Kremens, 52 N.J. 303, 311, 245 A.2d 313 (1968) ).
Although federal law requires only that waiver be proven "by a preponderance of the evidence," Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), New Jersey law requires that the prosecution "prove beyond a reasonable doubt that the suspect's waiver was knowing, intelligent, and voluntary in light of all the circumstances." Presha, 163 N.J. at 313, 748 A.2d 1108. When applying that standard, " 'knowledge' is always a relevant factor" but, "because the right is against compelled self-incrimination, 'knowledge' can be best understood as a condition of 'voluntariness,' which itself denotes the absence of 'compulsion.' " Reed, 133 N.J. at 255-56, 627 A.2d 630.
In other words, when "determining the validity of a Miranda waiver," trial courts must decide "whether the suspect understood that he did not have to speak, the consequences of speaking, and that he had the right to counsel before doing so if he wished." Nyhammer, 197 N.J. at 402, 963 A.2d 316 (quoting State v. Magee, 52 N.J. 352, 374, 245 A.2d 339 (1968) ). Our **398 decision in Nyhammer relied on the United States Supreme Court's further explanation that
Miranda does not require that "the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights" because "the additional information could affect only the wisdom of a Miranda waiver, not its essentially voluntary and knowing nature."
[ Id. at 407, 963 A.2d 316 (quoting Colorado v. Spring, 479 U.S. 564, 576-77, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) ).]
Accordingly, "a valid waiver does not require that an individual be informed of all information useful in making his decision." Ibid. (quoting Spring, 479 U.S. at 576, 107 S.Ct. 851 (internal quotation marks omitted)). Instead, a knowing, intelligent, and voluntary waiver is determined by the totality of the circumstances surrounding the custodial interrogation based on the fact-based assessments of the trial court. See Presha, 163 N.J. at 313, 748 A.2d 1108.
In the totality-of-the-circumstances inquiry, courts generally rely on factors such as "the suspect's age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved." State v. Miller, 76 N.J. 392, 402, 388 A.2d 218 (1978). For example, in Bey (II), we considered the totality of the circumstances, including the defendant's youth -- defendant turned eighteen two weeks before the interrogation -- and his "extensive record of delinquency." 112 N.J. at 135, 548 A.2d 887. In that instance, we found that the trial court properly ruled that the defendant's oral and written confessions -- obtained after just over three hours of interrogation and nine hours at the police station, during which the defendant asked to "lie down" and "was offered food, beverages, cigarettes, and the opportunity to rest" -- was voluntary. Id. at 134-35, 548 A.2d 887.
IV.
A.
We apply the above principles to decide whether the "trial court's factual findings in ... denying [defendant's] motion *222 to **399 suppress ... 'are supported by sufficient credible evidence in the record.' " S.S., 229 N.J. at 374, 162 A.3d 1058 (quoting Gamble, 218 N.J. at 424, 95 A.3d 188 ). In doing so, we first observe that defendant does not contend that his questioning was repeated or prolonged, or that he was subjected to physical coercion or mental exhaustion. Rather, defendant claims that the State has failed to meet its burden to prove beyond a reasonable doubt that defendant understood his rights and understood that he was waiving them.
Here, the trial court denied defendant's motion to suppress based on its fact-based assessment of the video-recorded interview of defendant's custodial interrogation. Specifically, the trial court observed that defendant appeared calm, appeared to appreciate the questions posed to him in both English and Spanish, and "was able to answer the questions forthrightly." The trial court also found that it was clear from the video record that the officers gave defendant an opportunity to read the waiver paragraph of the Miranda form presented to him and that defendant signed the waiver portion after reviewing it. Finally, the trial court found as a fact, based on defendant's calm demeanor and his request to have a Spanish translator present, that defendant would have expressed any difficulty he may have had in reading the waiver portion of the form. We must uphold those factual findings of the trial court if they are adequately supported. S.S., 229 N.J. at 374, 162 A.3d 1058.
Moreover, the record before this Court is "devoid" of any implication that defendant "was confused or did not fully appreciate his rights," nor was he "coerced, intimidated, or tricked" by police into giving a statement. State v. Mejia, 141 N.J. 475, 503 (1995) (superseded by statutory amendment and overruled on separate grounds). Instead, "[o]ur reading of the record" in this case "persuades us that the police, confronted with the practical problem of advising a Spanish-speaking suspect, adequately administered the Miranda warnings." Ibid.
**400 Ultimately, in response to the "critical issue" of whether defendant knowingly, intelligently, and voluntarily waived his Miranda rights, the trial court relied upon Detective Ramos's testimony at the hearing on defendant's motion to suppress his statement, and defendant's actions and appearance on the video record of his interrogation. The trial court found that the video showed defendant reviewing the waiver portion of the form, signing his name to indicate that he read and attested to the waiver portion, appearing alert and cognizant while the form was explained to him and while he signed it, and responding to questions. The court found that these actions supported the State's contention that defendant adequately understood his rights and that he was waiving his rights. Therefore, defendant's signature constituted a knowing, intelligent, and voluntary express waiver. In addition, when Detective Ramos asked whether defendant understood the waiver he had just read, defendant responded that he did.
While the better practice is to read the entire Miranda rights form aloud to a suspect being interrogated, based upon the trial court's factual findings we determine, however, the failure of Detective Ramos to do so here did not "improperly shift[ ] the burden of proof to defendant to alert the interrogating officers about any difficulty he may be having understanding the ramifications of a legal waiver." A.M., 452 N.J. Super. at 599, 178 A.3d 719. To eliminate questions about a suspect's understanding, the entire Miranda form should be read aloud to a suspect being interrogated, or the suspect should be asked to read the entire form *223 aloud. Where that is not done, the suspect should be asked about his or her literacy and educational background. Nevertheless, in this case, because sufficient credible evidence in the record supports the trial court's findings, we agree with the trial court that the State proved beyond a reasonable doubt that defendant made a knowing, intelligent, and voluntary express waiver of his Miranda rights. See S.S., 229 N.J. at 365, 162 A.3d 1058. We therefore need not reach the issue of implicit waiver. **401 We note here that by videotaping their questioning of defendant, police permitted the trial court to review the interview, and assess defendant's overall deportment and conduct as well as the officers' demeanor and conduct throughout the custodial interrogation. This demonstrates plainly the importance of videotaping custodial interrogations of suspects by police.
B.
Finally, with respect to the accuracy of both Detective Ramos's translation and the English transcript of the interrogation, any defendant has the right to challenge a translation under N.J.R.E. 104(c), which governs pretrial hearings on the admissibility of a defendant's statement. Where defense counsel and the prosecutor cannot agree on words, phrases, or redactions in a translated or other statement by a defendant, and a hearing under Rule 104(c) is required, the Rule specifically provides, "In such a hearing the rules of evidence shall apply and the burden of persuasion as to the admissibility of the statement is on the prosecution." Because a defendant has the right to contest a translation of his or her custodial interrogation, as was done here, and Rule 104(c) provides the mechanism to do so, we reject the holdings of the Appellate Division's concurring opinion. That said, the State, as well as the defendant, is best served by the use of a capable translator during an interview. If an unskilled person translates instead, errors in translation can throw off the question-and-answer session, be exposed to the jury later on, and possibly result in the transcript being barred.
V.
For the reasons set forth above, we reverse the judgment of the Appellate Division and reinstate defendant's conviction.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.