**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4608-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DION RICHARDSON,

    Defendant-Appellant.

_____

Submitted January 25, 2022 – Decided August 17, 2022

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-11-3732.

Joseph E. Krakora, Public Defender, attorney for appellant (Christopher W. Hsieh, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Hannah F. Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a motor vehicle stop, police officers conducted a warrantless search. The driver, defendant Dion Richardson, was charged with second-degree possession of a handgun without a permit to carry, N.J.S.A. 2C:39-5(b). He filed a motion to suppress, which was denied by the trial court after a hearing. After denial of the suppression motion, defendant pled guilty. Pursuant to the plea agreement, the court sentenced him to a forty-two-month term of incarceration with a forty-two-month parole ineligibility period.

On appeal, defendant challenges the court's denial of the suppression motion on three grounds: the police had no basis to conduct the vehicle stop; the police had no basis to conduct a protective sweep for weapons in the vehicle; and the sentencing court imposed an excessive sentence. We do not reach the last two points on appeal because we conclude, after a thorough review of the record and the applicable law, that there was no permissible basis to stop defendant's vehicle. We therefore reverse the order denying the motion to suppress and vacate defendant's guilty plea and his sentence.

I.

Officer Xavier Pimentel and Detectives Daniel Mendez, Ricardo Maciera, and Eli Irisari were patrolling the area of South Orange Avenue and North Munn Avenue in Newark, New Jersey to gather information on a recent shooting. The

officers drove marked and unmarked vehicles wearing civilian attire with their badges displayed. Officer Pimentel and Detective Mendez were in one car, and Detectives Maciera and Irisari occupied the second.

At the suppression hearing, Officer Pimentel testified on direct. He testified that he had been employed by the city for four years at the time of his testimony, which took place approximately seven months after defendant's arrest. At the time of the vehicle stop he was assigned to the Criminal Intelligence Unit. On the date of the incident, he and Detective Mendez were assigned to the area of South Orange Ave and North Munn Ave to gather information regarding a recent neighborhood shooting. They were in an unmarked police car, and Detective Mendez was driving. He testified that Detectives Maciera and Irisari were also assigned to the area, riding in a separate marked police car.

Officer Pimentel testified that he saw a car, a maroon Buick, commit a "motor vehicle violation," which he described as an "improper lane change," at South Orange Ave and North Munn. He stated that he observed the car, carrying four occupants, commit a traffic violation as it was traveling east on South Orange Ave approaching the intersection of North Munn. Officer Pimentel testified next that he and his partner made a U-turn to conduct a motor vehicle

3

stop. As he and Detective Mendez followed the vehicle, he stated that he observed passengers in the Buick "passing items back and forth." He testified that he "relayed that information to Detective Mendez." They continued to follow the Buick "looking for a safe spot" to conduct the stop.

The Buick turned south on Whitney and was stopped by Detectives Maciera and Irisari. Pimentel and Mendez continued east on South Orange, turning south at the next block, and pulling up next to the stopped Buick.

On cross-examination, Officer Pimentel acknowledged that his observations and the vehicle stop took place after midnight. He testified that, at the intersection, there was one vehicle stopped ahead of the maroon Buick and that it was initially behind the lead car in the eastbound left lane of South Orange. Pimentel saw no other cars when he and his partner were turning onto South Orange westbound and saw the Buick change lanes. According to Pimentel, the Buick changed lanes from left to right without signaling, but it stopped at the light.

Detective Mendez testified next, and he indicated that he did not see the maroon Buick commit a traffic violation, but that Pimentel "relayed" the information to him. Detective Maciera testified that he did not see the

A-4608-19

infraction, but that Pimentel and Mendez radioed the information to him. Detective Irisari did not testify.

During the motion court's oral decision, it relied on three cases in determining the stop of the Buick was justified. State v. Golotta, 178 N.J. 205 (2003), State v. Heisler, 422 N.J. Super 399 (App. Div. 2011), and State v. Moss, 277 N.J. Super. 545 (App. Div. 1994). The court stated:

> On a motion to suppress . . . the State need only prove that the police lawfully stopped the car[,] not that it could convict the driver of a motor vehicle offense. The issue is whether the officer had a reasonable articulable suspicion of a violation before the stop. [T]he officers found that there was a Title 39 violation. There were at least two vehicles in the vicinity of the defendant's vehicle, that is the police vehicle and this other vehicle that was described. I find that the State has met its threshold of the officers -- the establishing officers had a reasonable articulable suspicion of a violation in this case. So therefore, I find that the stop was a -- was a stop.

The motion court then analyzed the warrantless search, eventually concluding that the State presented sufficient facts to justify a protective sweep of the vehicle, resulting in the permissible seizure of the weapon.

Defendant pled guilty and was sentenced. On appeal, he makes three arguments.

5

POINT I

THE COURT ERRED IN CONCLUDING THAT POLICE LAWFULLY STOPPED DEFENDANT'S VEHICLE FOR FAILURE TO SIGNAL, AS THERE WAS NO EVIDENCE TO SUPPORT THE REQUISITE FINDING THAT OTHER TRAFFIC MAY HAVE BEEN AFFECTED BY DEFENDANT'S LANE CHANGE.

POINT II

THE COURT ERRED IN FINDING THAT PROTECTIVE SWEEP WAS JUSTIFIED, AS THERE WERE NO ARTICULABLE FACTS TO DEMONSTRATE THE PRESENCE OF A WEAPON IN THE VEHICLE, AND THE FOUR ARMED POLICE OFFICERS WERE IN FULL CONTROL OF THE SCENE AT ALL TIMES, THEREBY MINIMIZING THE RISK THAT SOMEONE COULD GAIN ACCESS TO A WEAPON.

POINT III

THE COURT ERRONEOUSLY FAILED TO APPLY MITIGATING FACTOR ELEVEN, THEREBY RESULTING IN AN EXCESSIVE SENTENCE.

## II.

"Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (first quoting State v. S.S., 229 N.J. 360, 374 (2017); then

6                                                          A-4608-19

quoting State v. Gamble, 218 N.J. 412, 424 (2014)). An appellate court should not disturb a trial court's findings unless "they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). "Those findings warrant particular deference when they are substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy." State v. Rockford, 213 N.J. 424, 440 (2013) (alteration in original) (internal quotation marks and citations omitted). "An appellate court owes no deference, however, to 'conclusions of law made by lower courts in suppression decisions,'" and reviews such decisions de novo. A.M., 237 N.J. at 396 (quoting State v. Boone, 232 N.J. 417, 426 (2017)).

The "[r]easonable suspicion necessary to justify an investigatory stop is a lower standard than the probable cause necessary to sustain an arrest[.]" State v. Legette, 227 N.J. 460, 473 (2017) (first alteration in original) (quoting State v. Stovall, 170 N.J. 346, 356 (2002)); see also Golotta, 178 N.J. at 213. The standard requires "'some minimal level of objective justification for making the stop.'" State v. Amelio, 197 N.J. 207, 211-12 (2008) (quoting State v. Nishina, 175 N.J. 502, 511 (2003)). The test is "highly fact sensitive and, therefore, not

readily, or even usefully, reduced to a neat set of legal rules." Nishina, 175 N.J.at 511.

The relevant portion of N.J.S.A. 39:4-126 reads, "[n]o person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement." Our Supreme Court has examined this statutory language under a very similar fact pattern and has concluded that "[t]he statute does not require a signal for every lane change." State v. Williamson, 138 N.J. 302, 304 (1994). And "[b]ecause the statute does not contain such a requirement, the officer ordering a stop must have some articulable basis for concluding that the lane change might have an effect on traffic." Ibid.

Pursuant to Williamson, the officer's observation that defendant changed lanes without using a signal is not enough to justify a traffic stop unless the failure to signal could have affected other traffic. See id. at 304 (agreeing with the State's position that a stop is justified if officers have a reasonable suspicion that the failure to signal affected other traffic).

The Buick was one of three cars that Pimentel observed, including his own. He and Detective Mendez were traveling in the opposite direction from defendant's Buick when he spotted it. Based on the suppression hearing record,

8

we are satisfied that Pimentel's vehicle was unaffected by the lane change. The only other vehicle Pimentel mentioned was the unidentified lead vehicle, idling at the traffic light, ahead of the Buick. The lead vehicle was stationary, and when the Buick pulled up next to it after its lane change, it too, came to a stop, waiting for the traffic light to change from red to green. As a stationary vehicle in front of the Buick, the lead car objectively could not have been affected by the Buick's lane change without a signal. The record shows no other cars to factor into the equation.

The court relied on two Appellate Division cases to support its finding that the stop of the Buick was justified, Heisler and Moss. In those cases, we considered N.J.S.A. 39:4-126 in the context of an investigatory vehicle stop. "[N.J.S.A. 39:4-126] . . . defines the motor-vehicle violation that justifies the stop in terms of whether the failure to signal may have affected any other traffic." Williamson, 138 N.J. at 305. Their facts are easily distinguishable from the record before us. In each case the police officer who made the observations and conducted the stop was driving behind the offending motorist. Our Supreme Court has found that the observing police officer's vehicle counts as part of the "other traffic" which "may be affected" by the offending lane change, and we concluded that the stops were justified. Id. at 304. Detective

Mendez and Officer Pimentel were not driving behind defendant's vehicle, but actually driving in the opposite direction when Pimentel made his observations.

The motion court also cited a Supreme Court case, Golotta, in support of its finding. We find that case inapposite. The facts involved a police officer acting on an anonymous 911 caller's tip that a motorist was operating their vehicle in an erratic and unsafe manner on a state highway. Golotta, 178 N.J. at 209-11. The driver was stopped and charged with N.J.S.A. 39:4-50, not N.J.S.A. 39:4-126. Ibid.

Because we find no proper justification for the investigatory stop, we do not reach the remaining points on appeal. We reverse the court's order denying the motion to suppress. We vacate defendant's guilty plea and the sentence. We remand for further proceedings consistent with this opinion.

Reversed, vacated, and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4608-19