**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1146-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ZYMIRAH PRIESTER,
a/k/a JABREE Z,

    Defendant-Appellant.

_____

Submitted April 23, 2024 – Decided May 1, 2024

Before Judges Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 21-02-0100.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Jake T. Bassinder, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Zymirah Priester appeals from an August 20, 2021 order denying her motion to suppress a weapon seized without a warrant during an investigatory stop. We affirm the challenged order, substantially for the reasons expressed by Judge Peter E. Warshaw, Jr. in his well-reasoned oral opinion.

I.

We glean the facts from the motion record. At approximately 7:00 p.m. on September 14, 2020, Detective Freddy Jimenez and several other officers from the Trenton Police Department responded to a report from an anonymous 9-1-1 caller who stated a group of females at 42 Mechanics Avenue were livestreaming on social media and threatening to shoot people. The caller informed the police that two members of the group had guns, and that children were in the same area. Further, the caller stated one suspect was a light-skinned, heavy-set female with braided hair, and another suspect was light-skinned.

When Detective Jimenez and other officers arrived on scene, they were in marked vehicles and in uniform. Jimenez noticed no one was in front of 42 Mechanics Avenue, but a group of approximately twenty people were situated directly across the street at 45 Mechanics Avenue. The detective believed the property at 45 Mechanics Avenue was abandoned, considering it was boarded up and marked by graffiti, and because he thought the individuals in front of 45

Mechanics Avenue were in violation of a Trenton ordinance by being on abandoned property, he was prepared to issue summonses for this violation.

When Jimenez stopped his vehicle at the scene, he saw defendant look to her left and right, "as if looking for an avenue of escape, like she did[ not] want to be there anymore." "[B]ased on the nature of the call," which was a "higher risk" "gun call," the detective ordered the group to "show [him] their hands . . . on the wall." As members of the group "stood up" to comply with this command, Jimenez saw defendant "simultaneously adjust[ing] something in her waistband," which the detective described as "a real odd bulge . . . around her waistband area." According to Jimenez, defendant stated "something along the lines of [']you all can[ not] check us, we['re] females.[']"

Jimenez "patted [defendant's] waistband area down" and "felt the . . . imprint of [a] gun." He immediately placed defendant under arrest and called for a female officer to assist him in "removing the handgun." A female officer promptly removed the gun and handed it to Jimenez.

In February 2021, defendant was indicted on the following charges: second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); fourth-degree possession of a high-capacity magazine, N.J.S.A. 2C:39-3(j); and third-degree theft by receiving stolen property, N.J.S.A. 2C:20-7(a). She

A-1146-22

subsequently moved to suppress the weapon seized during the September 14, 2020 incident.

The parties appeared for an evidentiary hearing on the suppression motion on July 23, 2021. Detective Jimenez testified for the State and was the only witness called to testify. During the hearing, counsel played portions of body-cam footage from officers who were present during the September 14 incident.

On August 20, 2021, Judge Warshaw entered an order denying the motion. In an oral opinion accompanying his order, the judge found "Detective Jimenez presented highly credible[,] persuasive testimony," and the detective's "recollection of events" at the time of defendant's arrest "w[ere] logical and consistent with various body-worn camera evidence."

Additionally, Judge Warshaw determined that on September 14, 2020, Jimenez and other officers responded to "a gun call" on Mechanics Avenue, based on "a report of a group of females who had been livestreaming on social media with guns" who were "threat[ening] to shoot" others. The judge found that after Jimenez reported to the scene:

> [D]etective [Jimenez] believed . . . 45 Mechanics [Avenue] was abandoned property. It was boarded up and there was graffiti all over it. There is a city ordinance against being on abandoned property. . . .

Detective Jimenez stopped the vehicle. He observed the defendant looking left and looking right as though she was looking for an avenue of egress, like she did not want to be there anymore. The detective approached the assembled individuals, asked them to show their hands[,] and move towards the wall.

. . . [D]efendant stood up and immediately adjusted something in her waistband area. [She] also said words to the effect of ["]you can't check us. We're females.["]

During this time, the detective observed what he called "a real odd" bulge in her waistband area. Detective Jimenez patted down the area of the waistband and felt what he knew was a gun. He believed this was a weapon when he saw it.

. . . [R]ather than remove the item himself, Detective Jimenez called for a female officer to do so. [Another d]etective . . . removed this firearm[,] which was produced in court[,] from . . . defendant's person.

Given these factual findings, the judge concluded:

[B]ased on the . . . surrounding circumstances[,] . . . Detective Jimenez had . . . . a reasonable articulable suspicion of unlawful activity and a reasonable articulable suspicion that . . . defendant could be armed and dangerous. This clearly authorized Detective Jimenez to approach . . . defendant with the idea that he would be conducting a Terry[1] frisk. He did[,] and the gun was quickly recovered.

. . . . [T]here[ wa]s no constitutional infirmity with anything which was done here.

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

5

. . . .

                . . . . The detective was entitled to investigate,
        [and] approach from the area where he was entitled to
        be . . . .

Thus, Judge Warshaw found "the State . . . met its burden of proof and established the validity of the warrantless search," so "[t]he physical evidence recovered" during the search would "be admissible at the trial of this matter."

In May 2022, defendant entered into a conditional plea agreement with the State, preserving her right to appeal the denial of her suppression motion. In exchange for her guilty plea to the second-degree weapons charge, the State agreed to recommend that defendant be sentenced to a five-year prison term, subject to one year of parole ineligibility. Three months later, Judge Warshaw sentenced defendant consistent with the terms of the plea agreement. He entered a conforming judgment of conviction on September 29, 2022.

II.

On appeal, defendant raises the following argument for our consideration:

        POINT I

        THE HANDGUN MUST BE SUPPRESSED
        BECAUSE, AT THE MOMENT DEFENDANT WAS
        ORDERED TO RAISE HER HANDS AND FACE
        THE WALL, THE POLICE LACKED REASONABLE
        SUSPICION      FOR      AN      INVESTIGATIVE

6

DETENTION; THAT LEVEL OF SUSPICION AROSE ONLY AFTER THE UNLAWFUL SEIZURE. U.S. CONST. AMEND. IV; N.J. CONST. ART. I, PAR. 7.

Our scope of review of a decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021); State v. Nelson, 237 N.J. 540, 551 (2019); State v. Boone, 232 N.J. 417, 425 (2017); State v. Robinson, 200 N.J. 1, 15 (2009). "Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when those findings are supported by sufficient credible evidence in the record." State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). We give deference to those factual findings in recognition of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 243 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

Thus, "[w]e ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, legal conclusions to be drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022); State v. Hubbard, 222 N.J. 249, 263 (2015).

A-1146-22

Both the Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of our State Constitution protect "against unreasonable searches and seizures" and prohibit the issuance of warrants in the absence of probable cause. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; see also State v. Robinson, 228 N.J. 529, 543-44 (2017). Moreover, "[p]eople, generally, are free to go on their way without interference from the government. That is, after all, the essence of the Fourth Amendment—the police may not randomly stop and detain persons without particularized suspicion." State v. Shaw, 213 N.J. 398, 409-10 (2012) (citing Terry, 392 U.S. at 9, 27).

"[S]earches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." Goldsmith, 251 N.J. at 398 (quoting Elders, 192 N.J. at 246). Additionally, evidence seized pursuant to an unlawful search "must be suppressed." State v. Smith, 155 N.J. 83, 100 (1998).

"To justify a warrantless search or seizure, 'the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023) (alterations in original) (quoting State v. Chisum, 236 N.J. 530, 546 (2019)).

A-1146-22

One exception to the warrant requirement is a protective search conducted during an investigative stop, also known as a <u>Terry</u> stop.

An investigative stop:

> involves a relatively brief detention by police during which a person's movement is restricted. . . . An investigative stop or detention does not offend the Federal or State Constitution, and no warrant is needed, "if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity."
>
> Although reasonable suspicion is a less demanding standard than probable cause, "[n]either 'inarticulate hunches' nor an arresting officer's subjective good faith can justify infringement of a citizen's constitutionally guaranteed rights." Determining whether reasonable and articulable suspicion exists for an investigatory stop is a highly fact-intensive inquiry that demands evaluation of "the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions." "An investigative detention that is premised on less than reasonable and articulable suspicion is an 'unlawful seizure,' and evidence discovered during the course of an unconstitutional detention is subject to the exclusionary rule."
>
> The inquiry is based on the totality of the circumstances and takes into consideration numerous factors, including officer experience and knowledge.
>
> [<u>Goldsmith</u>, 251 N.J. at 399-400 (first quoting <u>State v. Rodriguez</u>, 172 N.J. 117, 126 (2002), second quoting

State v. Stovall, 170 N.J. 346, 372 (2002) (Coleman, J., concurring in part and dissenting in part) (alterations in original), third quoting State v. Privott, 203 N.J. 16, 25-26 (2010), fourth quoting Elders, 192 N.J. at 247.)]

Next, it is well settled that "when [an] anonymous tip is conveyed through a 9-1-1 call and contains sufficient information to trigger public safety concerns and to provide an ability to identify the person" at issue, "a police officer may undertake an investigatory stop of that individual." Gamble, 218 N.J. at 429. The reason such a stop is permissible is because of "the 'enhanced reliability' of 9-1-1 calls." Ibid. (quoting State v. Golotta, 178 N.J. 205, 218 (2003)).

Additionally, a police officer may pat down a person if the officer has a reasonable suspicion that the person detained is armed and poses a danger to the officer. Terry, 392 U.S. at 26-27; State v. Roach, 172 N.J. 19, 27 (2002). During a permissible Terry stop and pat-down, an officer is authorized to perform "a carefully limited search of [a person's] outer clothing" to determine if weapons are present. Terry, 392 U.S. at 30; Roach, 172 N.J. at 27.

Guided by these principles and considering the totality of the circumstances found by Judge Warshaw regarding defendant's investigative detention and pat-down, we agree with the judge that both intrusions were lawful under the Terry doctrine. Here, as Judge Warshaw found, the totality of the circumstances included a 9-1-1 call to the Trenton Police Department, reporting

that a group of females on Mechanics Avenue were threatening to shoot people, and that two members of the group had firearms. The judge also found that when Detective Jimenez responded to the scene, the detective saw a group of females across the street from where the caller said the women would be, and they were sitting on abandoned property, contrary to a Trenton ordinance.

Further, the judge found that after Jimenez directed defendant and others in the group to show their hands on a wall, the detective immediately saw defendant reach for her waistband area, and he spotted what he described as an "odd bulge" in her waistband. The judge also credited the detective's testimony that the detective believed the bulge in defendant's waistband was a weapon before he patted down her waistband area and felt "[t]he imprint of a gun."

Judge Warshaw's factual and credibility findings are fully supported on the record and entitled to our deference. Therefore, we have no reason to disturb his conclusion that the totality of the circumstances preceding defendant's arrest created an objectively reasonable concern for the safety of Jimenez and other officers, and that the subsequent investigatory stop and protective pat-down of defendant were lawful. Accordingly, we affirm the suppression order for the reasons stated by Judge Warshaw in his thoughtful oral opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11