**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3983-24

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

JOHNNY SANTIAGO,

     Defendant-Respondent.

_____

Argued February 25, 2026 – Decided March 10, 2026

Before Judges Gummer and Jacobs.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 23-09-1922.

Frank J. Ducoat, Deputy Chief Assistant Prosecutor, argued the cause for appellant (Theodore N. Stephens II, Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the briefs).

Michael Denny, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Michael Denny, of counsel and on the brief).

PER CURIAM

The State appeals from a July 11, 2025 order suppressing defendant's recorded statement to police, concluding his waiver of <u>Miranda</u> rights was not knowing, intelligent, and voluntary beyond a reasonable doubt.[1]  We affirm.

I.

On June 29, 2023, police conducted a welfare check on Oscar Escobar at his apartment.  Escobar's wife, who was out of the country and unable to reach him by phone, requested the check.

Officers entered the apartment and found Escobar deceased on the floor, shoeless, with a knife lodged in the left side of his neck.  A broken bottle lay nearby, and blood was smeared on the walls.  Members of the Essex County Prosecutor's Office Crime Scene Unit photographed bloody sneaker prints at the scene.  Investigators determined that several items were missing from the apartment, including Escobar's television, a shopping cart, a shopping bag, and his cell phone.  An autopsy concluded Escobar had died from blunt force trauma and ligature strangulation.  The cause of death was determined to be homicide.

Building surveillance footage showed an individual, later identified by witnesses as defendant, entering the apartment complex, where defendant also

---

[1]  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-3983-24

lived, on June 27, 2023, at approximately 9:49 a.m.  The footage showed defendant leaving the building at approximately 10:09 a.m., while pushing a shopping cart containing a television, sneakers, and other items.

On July 6, 2023, defendant reported to probation, where officers detained him pursuant to a search warrant issued by a Superior Court judge.  Detectives transported him to the Essex County Prosecutor's Office, where they video recorded execution of the search, seizing defendant's clothing, including his black sneakers.  Investigators determined the soles of the sneakers matched the bloody shoeprints found at the homicide scene.

Later that afternoon, Detectives Michael DePrimio and Xavier Valentin outfitted defendant with a jumpsuit to replace his clothing.  They informed him he had been charged with murder, felony murder, burglary, and possession of a weapon for an unlawful purpose.[2]  Defendant said he understood the charges.  At approximately 3:00 p.m., Detective DePrimio advised defendant of his Miranda rights, reading from a Miranda form.  Defendant acknowledged he understood his rights but refused to sign or initial the form.

---

[2] Defendant was later indicted for two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1)(2), 2C:11-3(b)(4)(g); felony murder, N.J.S.A. 2C:11-3(a)(3); second-degree burglary, N.J.S.A. 2C:18-2; and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d).

Detective DePrimio asked defendant to read a written acknowledgment of his rights, first inquiring whether defendant could read and write English. Defendant said he could and that he had obtained his GED after reaching twelfth grade. However, defendant said he could not read the acknowledgment portion of the form because without his eyeglasses it was "blurry." Detective DePrimio proceeded to read aloud the following:

> I have been advised, and I have read the statement of my rights shown above. I understand what my rights are, and I am willing to answer questions and make a statement. I do not want a lawyer at this time, but understand that I may have one at any time I so desire. I also understand that I may stop answering questions at any time. I understand and know what I [am] doing. No promises or threats have been made to me, and no pressure of any kind has been used against me.

The detective then asked defendant whether he understood "all this" and "everything," referring to the form. Defendant responded, "yeah, yeah."

In the interrogation that followed, detectives provided defendant with food and water. Defendant acknowledged the sneakers he wore to the interrogation were the same pair he wore on June 27. Although he denied guilt, defendant identified himself in still images taken from the surveillance video, including images showing him pushing the shopping cart with the television.

4 A-3983-24

At 4:27 p.m., detectives stated on video that the interview had concluded. However, they continued speaking with defendant on the recording. During this exchange, detectives noticed defendant appeared unwell. Defendant stated he was "dope sick." Detectives told defendant they wanted to show him "one more thing" and that they would call EMS. They then asked, "do you want us to not show you?"

Between 4:37 p.m. and 4:55 p.m., detectives swabbed defendant for DNA and escorted him from the room for fingerprinting. When EMS personnel arrived, the interrogation room's equipment continued to record. Defendant told personnel he was experiencing heroin withdrawal symptoms, including body pain and nausea. One medic asked defendant if he "threw up." Defendant responded, "twice," "right before" detectives brought him into the interrogation room.

The State indicated its intention to introduce defendant's recorded statement at trial pursuant to N.J.R.E. 803(b). A N.J.R.E. 104(c) hearing was held on April 24, 2025, where defendant's recorded statement was played in open court. Detective DiPrimio was the sole witness to testify.[3] Counsel filed

---

[3] On the date of testimony, Detective DiPrimio gave his rank as sergeant, assigned to the financial crimes unit of the Essex County Prosecutor's Office.

A-3983-24

written submissions; however, there is no transcript in the record to reflect whether oral argument was held.

The motion judge issued an order dated July 11, 2025, with a fourteen-page statement of reasons denying the State's application. In her decision, the judge noted both sides had conceded defendant was subject to a custodial interrogation and <u>Miranda</u> applied. She found Detective DiPrimio's testimony credible. However, in considering the totality of the circumstances, the judge concluded the State had not met its burden to show defendant's <u>Miranda</u> rights waiver was knowing, intelligent, and voluntary beyond a reasonable doubt. In particular, the judge found questionable whether defendant "was of sufficient clear mind to understand the <u>Miranda</u> waiver."

In support of this conclusion, the judge cited four instances at the start of interrogation where defendant stated variations of, "I'm not signing no papers." The judge also noted defendant did not have his eyeglasses available to read the form. Accordingly, the judge found,

> [f]rom the record it is unclear if the defendant understood his <u>Miranda</u> rights and what he meant with his express refusal to sign the <u>Miranda</u> waiver form. If defendant's statements refusing to sign the <u>Miranda</u>

Throughout the hearing, he was referred to interchangeably as sergeant and detective. For ease of reference and comprehension, he is referred to as detective in this opinion.

6

waiver form were interpreted as a vague acquiescence, Det[ective] DiPrimio should have followed up with a clarifying question, as required under State v. Rivas, 251 N.J. 132 (2022)[,] to determine whether the defendant made a Miranda waiver under the knowing, intelligent, and voluntary standard articulated in State v. Bullock, 253 N.J. 512 (2023). Furthermore, though the defendant possessed sufficient education to read the Miranda waiver, he was physically unable to see the waiver that Det[ective] DiPrimio provided him, as he was missing his glasses and stated as much. This is an additional indication that the defendant did not make a knowing waiver.

Next, the judge found,

defendant was ill. The defendant told EMS he vomited right before his interview with police and showed signs of medical distress during and toward the end of the interview. Even while showing signs of medical distress and after indicating he was dope sick, law enforcement still tried to show him "one more thing" to continue the interview. The detectives did not verify with the defendant whether despite appearing ill, the defendant was of sufficient clear mind to understand the Miranda waiver. As such, considering the totality of the circumstances here, the State has not met its burden of proof beyond a reasonable doubt that the defendant knowingly, intelligently, and voluntarily waived his Miranda rights prior to giving the subject statement. Accordingly, defendant's statement to police on July 6, 2023 is inadmissible at trial under N.J.R.E. 803(b).

On appeal, the State maintains the motion judge was incorrect to find defendant's statement that he would not sign any papers was ambiguous or

constituted a "vague acquiescence" requiring clarification. Rather, it maintains "[e]verything that defendant said and did, when viewed as a whole, indicated a knowing, voluntary, and intelligent waiver." In support of its position, the State highlights these portions of the interrogation:

> DET. DIPRIMO: . . . if you're not willing to sign do you still want to proceed and talk?
>
> [DEFENDANT]: Yeah.
>
> DET. DIPRIMIO: . . . Do you want to proceed forward?
>
> [DEFENDANT]: Yeah.
>
> DET. DIPRIMIO: Okay. So you understand all this, but you just don't -- you don't want to sign.
>
> [DEFENDANT]: I'm not signing nothing.
>
> DET. DIPRIMIO: Okay. So I'm going to sign. You . . . so you understand everything? [Are] there any questions?
>
> [DEFENDANT]: Yeah. I'm not -- I'm not signing nothing.
>
> DET. DIPRIMIO: I understand. But do you understand everything?
>
> [DEFENDANT]: Yeah, yeah.
>
> DET. DIPRIMIO: Okay. But you do not want a lawyer at this time?
>
> [DEFENDANT]: No, . . . not at this time, no.

DET. DIPRIMIO: Okay. So --

[DEFENDANT]: We'll -- we'll see. Maybe going down the line. We'll see what happens, bro.

DET. DIPRIMIO: Okay. That's -- that's your right.

[DEFENDANT]: But as of right now -- as of right now, no, I don't want no lawyer.

The State also disputes the motion judge's conclusion that defendant's illness casts reasonable doubt as to whether he knowingly, voluntarily, and intelligently waived his Miranda rights. The State contends there was "no evidence" to support defendant's claims of illness as defendant did not testify at the Miranda hearing. It further argues that "even if true, this one fact does not outweigh the totality of the circumstances supporting a knowing, voluntary, and intelligent waiver."

II.

"Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). This is because the trial court has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v.

A-3983-24

Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "Thus, appellate courts should reverse only when the trial court's determination is so clearly mistaken that the interests of justice demand intervention and correction." Gamble, 218 N.J. at 425 (internal quotation marks omitted) (quoting Elders, 192 N.J. at 244).

"A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference." Ibid. (citing State v. Gandhi, 201 N.J. 161, 176 (2010); Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "Therefore, a trial court's legal conclusions are reviewed de novo." Ibid. (citing Gandhi, 201 N.J. at 176).

In Miranda, the United States Supreme Court held law enforcement must advise a suspect in custodial interrogation: (1) of his "right to remain silent"; (2) "that anything he says can be used against him in a court of law"; (3) "that he has the right to the presence of an attorney"; (4) "that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires"; and (5) that he can exercise his rights at any time during the interrogation. 384 U.S. at 479.

"[A] defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." Id. at 444. Waiver

A-3983-24

may be express or implied and is determined by considering the totality of the circumstances. State v. Tillery, 238 N.J. 293, 316 (2019). Courts may consider, among other things, a defendant's intelligence, age, education, familiarity with the criminal justice system, physical and mental condition, drug and alcohol problems, language barriers, and time lapse between the reading of Miranda rights and the incriminating statement. Id. at 317 (first citing 46 Geo. L.J. Ann. Rev. Crim. Proc. 3, 230-33 (2017) (footnotes omitted); and then citing State v. A.M., 237 N.J. 384, 398 (2019)).

"[W]hen 'determining the validity of a Miranda waiver,' trial courts must decide 'whether the suspect understood that he did not have to speak, the consequences of speaking, and that he had the right to counsel before doing so if he wished.'" A.M., 237 N.J. at 397 (quoting State v. Nyhammer, 197 N.J. 383, 402 (2009)). "Accordingly, 'a valid waiver does not require that an individual be informed of all information useful in making his decision.'" Id. at 398 (quoting Nyhammer, 197 N.J. at 407). Neither does Miranda "require that 'the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights' because 'the additional information could affect only the wisdom of a Miranda waiver, not its essentially voluntary and knowing nature.'" Nyhammer, 197 N.J. at 407

11

(quoting Colorado v. Spring, 479 U.S. 564, 576-77 (1987)).

"Instead, a knowing, intelligent, and voluntary waiver is determined by the totality of the circumstances surrounding the custodial interrogation based on the fact-based assessments of the trial court." A.M., 237 N.J. at 398. See State v. Knight, 183 N.J. 449, 468-70 (2005) (holding the defendant's waiver was valid because he freely gave an incriminating murder-related statement to police, considering he attended college for a year, was informed of his rights several times, was familiar with the criminal justice system, and did not request an attorney at any time); State v. Warmbrun, 277 N.J. Super. 51, 64 (App. Div. 1994) (holding the defendant's waiver was valid despite his refusal to sign a waiver form because he willingly discussed the matter with law enforcement and answered their questions). The State bears the burden of proving beyond a reasonable doubt that a defendant's waiver was made knowingly, voluntarily, and intelligently. Tillery, 238 N.J. at 316.

At the outset, we note the motion judge did not find dispositive defendant's refusal to sign the Miranda waiver form. To do so would have been legal error. See Warmbrun, 277 N.J. Super. at 62-63 (holding a suspect's refusal to sign a written acknowledgment of Miranda warnings "does not preclude a finding of waiver"); State v. Burno-Taylor, 400 N.J. Super. 581, 603-04 (App. Div. 2008)

12

(holding a defendant's refusal to sign a waiver form is one factor to be considered in the totality-of-the-circumstances analysis but "does not necessarily equate to an assertion of the right to remain silent").

The motion judge, however, found defendant's repeated refusal to sign the waiver form compelled detectives to seek clarification of defendant's understanding and intention with respect to waiver. In Rivas, cited by the motion judge, our Supreme Court held:

> Under our state law privilege against self-incrimination, a suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel. Thus, if a suspect's words amount to even an ambiguous request for counsel, the questioning must cease, unless the officer makes additional neutral inquiries that clarify that the suspect desires to waive the presence of counsel.
>
> [251 N.J. at 154 (citations and internal quotations marks omitted).]

On review of the interrogation recording, we perceive no error in the judge's determination that defendant's strident refusal to initial the waiver and sign the acknowledgment of those rights called for deeper clarification rather than simple repetition of conclusory questions: "[d]o you want to proceed forward?"; "[b]ut do you understand everything?"; "[b]ut you do not want a lawyer at this time?" Rather, the detectives were obligated to explore why

13

defendant refused to sign. They also needed to make clear that by continuing to speak to them, even though he had refused to sign, defendant would still be waving his rights.

The judge's findings regarding defendant's illness are also supported by sufficient credible evidence in the record. Granted, the judge did not pointedly find defendant to be a credible witness and defendant did not testify at the N.J.R.E. 104 hearing. However, it was within the motion judge's capacity to assess evidence in the form of defendant's video-recorded statement, giving it the weight merited within her reasonable discretion, whether or not corroborated by other evidence in the record. S.S., 229 N.J. at 374 (quoting Gamble, 218 N.J. at 424).

As cited above, among the factors commonly considered regarding the validity of a waiver, including, a defendant's "physical and mental condition, and drug and alcohol problems . . . , [c]ourts may take into account other factors that are pertinent to a given case." Tillery, 238 N.J. at 317. Thus, it was likewise within the judge's capacity to extrapolate on defendant's physical condition, including onset of illness.

Even were we to disagree with the motion judge's findings, the presence of even one valid factor would permit the conclusion reached. See State v.

Bullock, 253 N.J. 512, 534 (2023) ("the presence of even one of those factors may permit the conclusion that a confession was involuntary") (quoting State v. Hreha, 217 N.J. 368, 384 (2014)).

Following careful review of the record, we are satisfied the motion judge relied on sufficient, credible evidence and properly applied valid factors in concluding the State did not prove beyond a reasonable doubt that defendant's waiver was knowing, intelligent, and voluntary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3983-24